945 P.2d 717 (1997)
88 Wash.App. 10
Jim C. HOLLIS and Connie M. Hollis, husband and wife; Richard L. Mansor and Toni C. Mansor, husband and wife, Respondents,
v.
GARWALL, INC., a Washington Corp.; Stephen Garner and Jane Doe Garner, husband and wife; Charles Wallin and Jane Doe Wallin, husband and wife; Ibex Construction Inc., a Washington Corp., Appellants,
Beattie Explosives, Inc., a subsidiary of Explosives Technologies International, an Idaho Corporation; Defendants.
No. 16033-5-III.
Court of Appeals of Washington, Division 3, Panel One.
July 29, 1997.
As Amended on Denial of Reconsideration October 21, 1997.
*718 David E. McGrane, McGrane & Schuerman, Colville, James E. Reed, Spokane, for Appellant.
David Davidson, Winslow, for Respondent.
BROWN, Judge.
Today we determine whether restrictive language contained in a subdivision plat applies to all parcels included in the plat. We hold that it does and affirm the trial court's granting of injunctive relief.
Connie and Jim Hollis purchased two lots in a residential subdivision in Stevens County, Washington. Tonia and Richard Mansor also purchased property in this quiet, rural area. Both properties were included on a document entitled "Short Plat 79-80 by Survey." The first two pages of the document contain a map of the entire subdivision, consisting of 14 parcels labelled as Tracts A through N, and four parcels labelled as SP-1 to SP-4. Each of the four latter parcels contain fewer than 20 acres.
Three numbered paragraphs appear on the third page of the document under the heading "RESTRICTIONS." The third paragraph provides:
3. This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit. Conversion of any lot to other than its authorized occupancy must be in accordance with authorizations and associated with separate application and procedure.
Certifications by the surveyor, the county planning director, and members of a partnership consisting of 11 individuals described as owners, appear beneath this language. The document was filed for public record on January 15, 1981.
The Hollises and the Mansors believed all parcels within the subdivisions were restricted to residential use. Garwall, Inc., purchased property in the subdivision. In May, 1995, Garwall began preparations for operating a gravel mine on its property. The Hollises and Mansors promptly complained to Garwall, but Garwall proceeded with its operation. The mining operation caused dust, noise, and disruption of the natural beauty of the area. Believing this to be a clear violation of restrictions applicable to all property in the subdivision, the Hollises and Mansors commenced this action against Garwall for damages and injunctive relief.
The court granted the Hollises' and Mansors' motion for partial summary judgment, enjoining continued mining and rock crushing *719 activity, and reserving the issue of damages for trial. Garwall, Inc., appeals.
Property owners are entitled to the enforcement of restrictive covenants. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 883 P.2d 1383 (1994). The threshold issue is whether the restriction here is an enforceable covenant running with the land. To be enforceable, a covenant must have been enforceable among the original parties, concern both the burdened and benefitted land, be intended to bind successors in interest, and there must be privity among the original parties, and between them and the present disputants. Leighton v. Leonard, 22 Wash.App. 136, 139, 589 P.2d 279 (1978).
Garwall contends the "restrictions" are merely statements of government regulations, rather than an enforceable agreement among the original parties. Garwall further argues even if the restriction is enforceable it applies only to the four "short plat" parcels, not to the larger tracts. This argument assumes the word "plat" is merely an abbreviated reference to a short plat. Under such a definition, the restriction which by its own terms applies to "this plat" would apply only to the four parcels subject to "short plat" regulations. Examination of the relevant statutory definitions discloses the flaw in this reasoning: RCW 58.17.020 states:
As used in this chapter, unless the context or subject matter clearly requires otherwise, the words or phrases defined in this section shall have the indicated meanings.
(1) "Subdivision" is the division or redivision of land into five or more lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership, except as provided in subsection (6) of this section.
(2) "Plat" is a map or representation of a subdivision, showing thereon the division of a tract or parcel of land into lots, blocks, streets and alleys or other divisions and dedications.
....
(6) "Short subdivision" is the division or redivision of land into four or fewer lots, tracts, parcels, sites or divisions for the purpose of sale, lease, or transfer of ownership....
....
(8) "Short plat" is the map or representation of a short subdivision.
Under these definitions, the document filed with the Stevens County Auditor, although entitled "Short Plat 79-80 by Survey" was a final plat, that is, a final drawing of the entire subdivision.[1] The phrase "this plat," used in that document, necessarily refers to the entire subdivision.
"A court must construe restrictive covenants by discerning the intent of the parties as evidenced by clear and unambiguous language in the document." Mountain Park Homeowners Ass'n, 125 Wash.2d at 344, 883 P.2d 1383. The language of the restriction contained in the recorded plat clearly and unambiguously applies to the entire subdivision.
Garwall contends even if the restriction applies to its property, the language of the restriction is ambiguous. Garwall argues the actual intent of the original parties should be considered in construing restrictions and present affidavits from the original parties stating they did not intend to prohibit non-residential use such as mining and rock crushing. It is also contended the language is capable of being understood as inclusive not exclusive.
In construing a restrictive covenant, the court's primary objective is to determine the intent of the parties, giving the language of the covenant its ordinary and common meaning. Metzner v. Wojdyla, 125 Wash.2d 445, 886 P.2d 154 (1994). Language *720 in a plat indicating the use of the land is restricted to residential purposes is construed to prohibit any commercial or business use of the property. Id.; Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 854 P.2d 1072 (1993); Hagemann v. Worth, 56 Wash.App. 85, 782 P.2d 1072 (1989).
The language to be construed in this case reads "Restrictions ... This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit." This language unambiguously precludes a commercial mining and rock crushing operation. The "restriction" implies a limitation, not an expansion of use to the argument it is inclusive rather than exclusive fails.
Garwall contends the court erred in excluding an affidavit asserting the original landowners had no intent to create a restrictive covenant limiting the entire subdivision to residential use. Garwall contends Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990), requires consideration of extrinsic evidence of intent even when a written instrument is unambiguous. The applicability of the context rule announced in Berg to the interpretation of restrictive covenants is impliedly rejected by Mountain Park Homeowners Ass'n, 125 Wash.2d at 344, 883 P.2d 1383: "A court must construe restrictive covenants by discerning the intent of the parties as evidenced by clear and unambiguous, language in the document.... Only in the case of ambiguity will the court look beyond the document to ascertain intent from surrounding circumstances."
Finally, Garwall contends the court erred in failing to consider each of the factors relevant to the granting of an injunction, and claims that those factors present factual issues which could not be resolved upon summary judgment.
Injunction is an equitable remedy; the granting of which is in the court's discretion. Holmes Harbor Water Co. v. Page, 8 Wash.App. 600, 508 P.2d 628 (1973). The essential elements of the right to injunctive relief are necessity and irreparable injury. Id. at 603, 508 P.2d 628. In the exercise of its discretion, the court may consider a number of circumstances including the adequacy of other remedies, delay in bringing suit, plaintiff misconduct, and the relative hardship to the parties resulting from the granting or denial of injunctive relief. Id. at 603, 508 P.2d 628. These circumstances are not, however, essential elements of an action for injunctive relief.
In the absence of injunctive relief, there is no dispute Garwall would continue to impair the Hollises' and Mansors' enjoyment and use of their property. Their affidavits, describing the extreme and continuing interference with their lives, establish continuing mining operations cause substantial, irreparable injury and the necessity for injunctive relief. See Mains Farm Homeowners Ass'n, 121 Wash.2d at 821, 854 P.2d 1072. There is no evidence in the record suggesting the availability of other adequate remedies, delay in commencing this action, or misconduct on the part of the plaintiffs. Garwall presented evidence of serious financial hardship which would result from granting the injunction, but a defendant who proceeds after receiving prior warning his activity invades the property rights of another is not entitled to the benefit of balancing the relative hardship. Bach v. Sarich, 74 Wash.2d 575, 445 P.2d 648 (1968). The record demonstrates the plaintiffs gave Garwall ample warning of the residential restriction and their desire to enforce it.
Garwall has moved to supplement the record with an affidavit of the Steven's County plat administrator stating that there are 1,494 short plats, approved between 1980 and 1996 in Stevens County, containing similar restrictive language. The affidavit states that the county's intent in requiring the language "this plat is approved as a residential subdivision" was to indicate that percolation tests had established the lots would support septic systems.
This court may authorize the taking of additional evidence during the pendency of an appeal if six criteria are met:
(1) additional proof of facts is needed to fairly resolve the issues on review, (2) the *721 additional evidence would probably change the decision being reviewed, (3) it is equitable to excuse a party's failure to present the evidence to the trial court, (4) the remedy available to a party through post-judgment motions in the trial court is inadequate or unnecessarily expensive, (5) the appellate remedy of granting a new trial is inadequate or unnecessarily expensive, and (6) it would be inequitable to decide the case solely on the evidence already taken in the trial court.
RAP 9.11(a). See Harbison v. Garden Valley Outfitters, Inc., 69 Wash.App. 590, 849 P.2d 669 (1993). The rule authorizes supplementation only in extraordinary cases. See Washington Federation of State Employees, Council 28, AFL-CIO v. The State of Washington, 99 Wash.2d 878, 665 P.2d 1337 (1983). Prior to submission of this supplemental affidavit, the record was devoid of evidence the phrase had any meaning other than to create a residential subdivision, a phrase generally understood as excluding non-residential use. The affidavit identifies a second, albeit obscure meaning, namely, that residential use is merely permitted. Thus, the affidavit satisfies the first criterion of RAP 9.11(a) in that it shows additional facts needed to fairly resolve the issue of whether the covenant is ambiguous. But it would be inequitable to permit Garwall to wait until this court's opinion is filed and then come forward with evidence that might have supported a different result. Permitting a party to supplement the record under these circumstances undermines principles of finality and invades the province of the trial court. Accordingly, the motion to supplement is denied.
Garwall failed to show the trial court abused its discretion in granting injunctive relief to the Hollises and Mansors.
Affirmed.
SWEENEY, C.J., concurs.
THOMPSON, J., dissents.
THOMPSON, Judge (dissenting).
I respectfully dissent. The majority's decision never directly addresses the major issue in this case: Is the document entitled "Short Plat 79-80 by Survey" an enforceable covenant running with the land? The majority lists, but does not discuss, the prerequisites of an enforceable covenant:
(1) [T]he covenants must have been enforceable between the original parties, such enforceability being a question of contract law except insofar as the covenant must satisfy the statute of frauds; (2) the covenant must "touch and concern" both the land to be benefitted and the land to be burdened; (3) the covenanting parties must have intended to bind their successors in interest; (4) there must be vertical privity of estate, i.e., privity between the original parties to the covenant and the present disputants; and (5) there must be horizontal privity of estate, or privity between the original parties.
Leighton v. Leonard, 22 Wash.App. 136, 139, 589 P.2d 279 (1978) (footnotes and citation omitted).
Instead of addressing these requirements, the majority attempts to resolve Garwall's contention that the document applied only to the four "short-plat" parcels. Of course, the linchpin of the majority's reasoning is its implied conclusion that, because the "Short Plat 79-80 by Survey" applied to all of the parcels in the subdivision, it created a valid covenant. If we were to assume the document applied to all of the parcels, it is far from clear it should be treated as an enforceable covenant. On the record before us, there is at least a factual question as to the intent of the original parties.
The majority's (and the trial court's) refusal to consider extrinsic evidence of the parties' intent is apparently based on the conclusion the parol evidence rule bars such evidence. But even in a contractual dispute, the parol evidence rule does not preclude extrinsic evidence as to whether a contract actually was created. Bond v. Wiegardt, 36 Wash.2d 41, 48, 216 P.2d 196 (1950); see 3 Arthur Linton Corbin, Corbin on Contracts § 577 (1960). The extrinsic evidence offered by Garwall here was relevant to whether the parties intended the "Short Plat 79-80 by Survey" to be enforceable as a covenant.
The majority cites three cases for its assertion that "[l]anguage in a plat indicating *722 the use of the land is restricted to residential purposes is construed to prohibit any commercial or business use of the property." Majority, at 720. The issue in all of these cases was how the restrictive covenants should be interpreted; none establishes that a plat document like the one in this case creates an enforceable restrictive covenant. In Metzner v. Wojdyla, 125 Wash.2d 445, 886 P.2d 154 (1994), and in Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 854 P.2d 1072 (1993), the issue was not whether the language created valid restrictive covenants, but how the language should be interpreted; there is no indication in either case that the language was contained in a plat. The covenant at issue in Hagemann v. Worth, 56 Wash.App. 85, 782 P.2d 1072 (1989), apparently was contained in a plat, but there was no question that the language created a restrictive covenant; the issue before the court was how the covenant should be interpreted. In this case, by contrast, the major issue before us (never resolved by the majority) is whether the document created a valid restrictive covenant.
Moreover, even if the surveyor's document were a restrictive covenant, our role is to give effect to the parties' intent. Mains Farm Homeowners Ass'n, 121 Wash.2d at 815, 854 P.2d 1072. This intent is determined by examining the clear, unambiguous language of the entire document; the court should look at extrinsic evidence of the parties' intent only when the document itself is ambiguous. Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 344, 883 P.2d 1383 (1994). The language at issue here is:
3. This plat is approved as a residential subdivision and no tract is to have more than one single family residential unit. Conversion of any lot to other than its authorized occupancy must be in accordance with authorizations associated with separate application and procedure.
The majority concludes that this language "unambiguously precludes a commercial mining and rock crushing operation." Majority, at 720. On the contrary, the only thing the language unambiguously precludes is more than one single residential unit on each tract; it does not expressly or impliedly restrict any commercial uses of the land, much less mining or rock-crushing. Because the language is ambiguous, the trial court should have considered extrinsic evidence of the parties' intent.
I would reverse the trial court's summary judgment order granting an injunction and remand for resolution of these factual questions.
NOTES
[1] The applicable statute demonstrates that the term plat is intended to apply to all subdivisions, not merely short subdivisions:

"(1) A proposed division of land, as defined in RCW 58.17.020, shall be considered under the subdivision or short subdivision ordinance, and zoning or other land use control ordinances, in effect on the land at the time a fully completed application for preliminary plat approval of the subdivision, or short plat approval of the short subdivision, has been submitted to the appropriate county, city, or town official." RCW 58.17.033.