149 P.3d 402 (2006)
Edward L. WIMBERLY and Carol Wimberly, Respondents,
v.
Larry J. CARAVELLO, Appellant.
No. 24301-0-III.
Court of Appeals of Washington, Division 3.
December 14, 2006.
*405 Mark David Mestel, Attorney at Law, Everett, WA, for Appellant.
Stephen Thomas Graham, Attorney at Law, Republic, WA, for Respondents.
SWEENEY, C.J.
¶ 1 This is an action to enjoin construction of a three-story garage based on a restrictive covenant. The court admitted testimony by the drafters of a covenant to explain the purpose of the covenant and the intended meaning of the terms garage, simple, and well-proportioned. Based on this testimony, the trial court granted an injunction despite the fact that the structure was substantially completed. Extrinsic evidence is admissible to add context and to explain the terms of written contracts including residential real estate covenants. This was a proper exercise of the court's authority in equity, and we affirm the decision to enjoin this project.

FACTS
¶ 2 Edward and Carol Wimberly and Larry Caravello own neighboring lots in Martin Creek, a housing subdivision on the west bank of Lake Roosevelt in Ferry County. Mr. Caravello obtained a county permit to build a 27-foot 3½-inch high, multi-story structure he described as a "garage with office above." Clerk's Papers (CP) at 756, 788-89. It had a bathroom but no kitchen. The actual structure was 30 feet taller than the adjacent houses.
¶ 3 The Martin Creek community is governed by a set of bylaws with restrictive covenants. The purpose of the covenants is to protect property values and views. By their own terms, the covenants are enforceable both "at law and in equity." CP at 786. The Martin Creek Community Association (Association) is a nonprofit corporation with a governing board established to enforce the bylaws and covenants. But by the terms of the covenants anyone owning or leasing land in the subdivision can prosecute a civil action to enforce the covenants and recover damages.
¶ 4 The Association Board (Board) did not object to Mr. Caravello's garage. The Board did not review the project until the building was almost finished. It then decided that the structure was fine because the covenants do not specify a height limit. The Board formally decided to take no action. The Association already faced a multi-million-dollar lawsuit over the covenants and did not want another.
¶ 5 The disputed covenant reads:
[O]nly one and only single-family residences and outbuildings auxiliary thereto (such as garages, wood sheds and the like) may be constructed or permitted to remain on each single-family residential lot in the subdivision.
Buildings on residential lots shall be simple, well-proportioned structures.
CP at 787. The trial court agreed that Mr. Caravello's multi-story mixed use building was not a simple and well-proportioned garage. Report of Proceedings (RP) (Jan. 16, 2004) at 28-29.
¶ 6 The Wimberlys winter in Nevada. When a neighbor told Mr. Wimberly about the Caravello project, he immediately began complaining to the Board. The Wimberlys sued when the Board declined to act. When Mr. Caravello was served with notice of the lawsuit, he speeded up construction until the court issued a temporary injunction.
¶ 7 The Wimberlys moved for a permanent injunction. The court denied the motion. It concluded that the Wimberlys' claims that Mr. Caravello had built a second residence, not a garage, and that the drafters of the covenants intended to ban such hybrid structures were disputed questions of fact. A bench trial followed. Construction experts testified. Michael and Ronald Matney were the authors of the original covenants. They also testified. And the trial judge personally visited the site.
¶ 8 The court found that the properties are subject to the covenants and that the covenants touch and concern the land. The court concluded that the restrictions are, therefore, enforceable equitable covenants. See Hollis v. Garwall, Inc., 137 Wash.2d 683, 691, 974 P.2d 836 (1999).
¶ 9 Ron Matney filed a declaration. It defined "garage" as "a single car garage or *406 double car garage, perhaps, with an attic storage space, but with no other rooms that didn't involve small storage." CP at 242. He declared that a purpose of the restrictive covenants was "to prevent a crowded look to the area and to limit the size of structures so as to avoid the obstruction of views of the Columbia River." CP at 242. The court concluded that the word "garage" as used in the covenant had its usual meaning of a one-story building for the shelter of vehicles and storage of household tools. The court also concluded that the words "simple" and "well-proportioned" also had their accepted usual meanings. The court found that Mr. Caravello's office and recreation room were residential uses.
¶ 10 The court concluded, accordingly, that the structure violated the covenants and that the Wimberlys had a right to a permanent injunction. The court rejected the argument that Mr. Wimberly acquiesced in the violation. The court concluded that Mr. Wimberly had acted with due diligence and objected appropriately. The court concluded that the Board acted improperly, although in good faith. And the court concluded that Mr. Caravello ceased to be an innocent party when he rushed to complete his project after receiving notice of the Wimberlys' suit.
¶ 11 The court ordered Mr. Caravello to bring his building into compliance with the covenant restrictions. It determined this meant no more than a 1½-story, traditional garage.

DISCUSSION
SUBJECT MATTER JURISDICTION
¶ 12 Mr. Caravello first contends that the Association Board was an indispensable party to this action and that the Wimberlys' failure to join the Association as a party deprived the court of jurisdiction over the subject matter of this dispute.
¶ 13 The Wimberlys respond that the Association is not a necessary party. And, even if it were, the Association's absence does not affect the court's jurisdiction. The Wimberlys argue that the Board was not a necessary party because it had no interest in the outcome of this action. The Board did not preapprove Mr. Caravello's design and its individual members were not being sued. Accordingly, the court could and did afford the parties complete relief without the Board.
¶ 14 Subject matter jurisdiction is a question of law; and so our review is de novo. Ledgerwood v. Lansdowne, 120 Wash.App. 414, 419, 85 P.3d 950 (2004) (citing Crosby v. Spokane County, 137 Wash.2d 296, 301, 971 P.2d 32 (1999)). The superior court has original jurisdiction over all cases and proceedings in which jurisdiction has not been vested exclusively in some other court. WASH. CONST. art. IV, § 6; Lansdowne, 120 Wash. App. at 419, 85 P.3d 950. Mr. Caravello does not contend that another court has jurisdiction over this dispute. His jurisdiction argument is solely that the Board was a necessary party.
¶ 15 But the court's jurisdiction does not turn on the presence or absence of a party. Lindberg v. Kitsap County, 133 Wash.2d 729, 744-45, 948 P.2d 805 (1997). Failure to join affects only the court's authority over the absent party. Id.
¶ 16 We review the trial court's decision that a party is indispensable for abuse of discretion. Id. It is the trial court's call whether or not to join a party so long as the court can completely resolve the issues without adding parties. Id. at 745, 948 P.2d 805. Here, the Wimberlys' standing to invoke the court's jurisdiction is found in the plain language of the bylaws. The court also appropriately exercised subject matter jurisdiction under chapter 7.40 RCW (action for injunction).
JOINDER
¶ 17 Civil Rules 19 (mandatory joinder) and 20 (permissive joinder) set out the duty and authority of the trial court in the matter of joinder of parties.
¶ 18 Mandatory: If feasible, the court must join a party in order to give complete relief to the existing parties, to protect a person's interest who is not a party in the action, or to spare the existing parties the *407 risk of increased or inconsistent obligations. CR 19(a).
¶ 19 Ultimately, the court is obligated to join only entities that could be prejudiced one way or another by the decision. Here, the Association Board would not be prejudiced one way or another by this litigation. The Board's president and treasurer signed a letter that the Association "has no interest in or is involved in any way" with this action. CP at 656. And the Wimberlys neither asserted nor defended a claim against the Association. Moreover, injunctions are binding solely on entities whose interests are represented. All Star Gas, Inc. v. Bechard, 100 Wash.App. 732, 737, 998 P.2d 367 (2000).
¶ 20 Permissive: The court may join a person as a defendant if one of the parties asserts a claim against that person based on the same transaction or occurrence or a common question of law or fact. CR 20(a). The decision to join that party is discretionary with the court. Mr. Caravello refers in his brief to an "identified" cross-claim against the Association for indemnity. But the record contains no pleading asserting any such claim against the Association.
¶ 21 There was no reason, then, to join the Association as a party to this action.
COURT MAY SUBSTITUTE ITS JUDGMENT FOR THAT OF THE BOARD
¶ 22 In a related assignment of error, Mr. Caravello asserts that the court cannot substitute its judgment for that of "decision-making entities" such as homeowner association boards. Appellant's Br. at 26. But the cases he cites in support of this contention involve government agencies and claims of individual liability against corporate board members. The one case Mr. Caravello cites that involves a community association board, Riss v. Angel,[1] is not on point. Mr. Caravello concedes that here, as distinguished from Riss, Board wrong-doing was not at issue. Indeed neither party asserted claims against the Board here.
¶ 23 Mr. Caravello contends that the homeowner's association act, chapter 64.38 RCW, expresses the legislature's intent that boards exercise the authority granted by their bylaws. Consistent with this, Mr. Caravello urges us to hold that judges cannot substitute their judgment for that of homeowner association boards.
¶ 24 But the homeowner's association act begins, "Except as provided in the association's governing documents. . . ." RCW 64.38.025(1). And the governing documents here clearly do provide otherwise. This Association's bylaws and covenants provide that individuals may invoke the jurisdiction of the court to resolve covenant disputes. And that is what the Wimberlys did. By definition, jurisdiction is the power of a court to impose its judgment on the parties and subject matter of litigation. BLACK'S LAW DICTIONARY 855 (7th ed.1999).
EXTRINSIC EVIDENCE OF DRAFTERS' INTENT
¶ 25 The court relied on testimony by the Matney brothers on the meaning of the covenants. Mr. Caravello contends this was wrong because this extrinsic evidence shows only the drafters' unilateral subjective intent. Mr. Caravello argues that only objective manifestations of intent are relevant. And the court should have found these solely in the language of the covenant.
¶ 26 Mr. Caravello does not dispute that the covenant is binding. Mr. Caravello challenges only the way the court determined what the covenant means.
¶ 27 The interpretation of a restrictive covenant is a question of law that we review de novo. Parry v. Hewitt, 68 Wash. App. 664, 668, 847 P.2d 483 (1992). Like the trial court, our primary task is to determine the intent of the drafters. Hollis, 137 Wash.2d at 695, 974 P.2d 836.
¶ 28 We apply basic rules of contract interpretation. Lane v. Wahl, 101 Wash.App. 878, 883, 6 P.3d 621 (2000). This includes the "context" rule of Berg v. Hudesman.[2]Wahl, 101 Wash.App. at 883, 6 P.3d *408 621. That is, the court determines the intent of the contracting parties by viewing the contract as a whole, its subject matter and objective, the circumstances surrounding its making, the subsequent acts and conduct of the parties, and the reasonableness of the interpretations advocated by the parties. Berg, 115 Wash.2d at 667, 801 P.2d 222. Extrinsic evidence is admissible as to "the entire circumstances under which the contract was made" to help the court ascertain the parties' intent. Id.
¶ 29 Context evidence is not admissible to import into a writing an intention not expressed. It is admissible solely to clarify the meaning of the written words used. The court is to declare the meaning of what the parties wrote, not what they intended to write. If the evidence illuminates the situation of the parties and the circumstances under which they executed the agreement, then it is admissible. Id. at 669, 801 P.2d 222 (quoting J.W. Seavey Hop Corp. v. Pollock, 20 Wash.2d 337, 348-49, 147 P.2d 310 (1944)).
¶ 30 Specifically, the court must decide what constitutes "reasonableness" in a covenant in the context of the overall purpose of the covenants and the surrounding facts. Meresse v. Stelma, 100 Wash.App. 857, 865, 999 P.2d 1267 (2000). Extrinsic evidence is admissible for this purpose. Hollis, 137 Wash.2d at 694-95, 974 P.2d 836.
¶ 31 The circumstances surrounding the drafting of these covenants was the creation of a new residential community overlooking Lake Roosevelt. The scenic location and views are an intrinsic part of the aesthetic and monetary value of the lots. We agree with the trial court that to interpret the garage covenant as permitting a multi-story, multi-purpose structure, considerably taller than the house, with a bathroom and two rooms (office and recreation room) exclusively for residential use  and with exterior carports  would defeat the drafters' manifest purpose. The interpretation adopted by the court is reasonable considering the covenants in context. This conclusion is based on the court's findings that were in turn based in part on the testimony of the original developers.
SUBSTANTIAL EVIDENCE SUPPORTS THE COURT'S FINDINGS
¶ 32 Mr. Caravello assigns error to findings of fact 1, 4, 6, 7, 13, 16, 17, and 19. He disputes the findings based primarily on the court's decision to admit extrinsic evidence of the meaning of the covenants.
¶ 33 Finding 1 says there are two tiers of lots, one tier being view lots. Mr. Caravello complains that only the original developer, Ron Matney, testified to this. That may be correct, but Mr. Matney's testimony is substantial evidence. The plat diagram introduced also shows this. And it was introduced by Mr. Caravello. Besides that, the judge visited the site and saw the layout for himself.
¶ 34 Finding 4 says the Matney brothers intended the covenants to "protect and preserve the lot views." CP at 692. Mr. Caravello points out that the covenant language does not say this. But, again, Ron Matney testified to this. Moreover, as Mr. Wimberly argues, all residential aesthetic restrictions are intended to protect views. The only plausible reason to restrict the number and size of buildings here was to preserve the spectacular views of Lake Roosevelt.
¶ 35 Mr. Caravello contends that, by concluding that the covenants permit only a "traditional" garage, finding 6 erroneously gives effect to the Matneys' testimony that two-story garages were unknown to them in 1979. The Wimberlys respond that the court properly looked at the context in which the drafters used the term "garage." In the 1970s a garage was what the court calls "traditional." The Wimberlys cite to the record: "Q: Did you know of any two-story garages at that time? A: No." 1RP at 88. Simply calling a structure a garage does not make it one.
¶ 36 As to the intended meaning of "simple" and "well-proportioned" in finding No. 7, Mr. Caravello argues that the court relied on non-existent Matney testimony that the goal was to protect views. And, Mr. Caravello contends, even if the Matneys did testify about views, again, it merely shows *409 their unilateral, subjective intent and is, therefore, inadmissible. Mr. Caravello argues that no evidence supports the court's finding that the Matneys considered the relation between structure size and lot size and comparative sizes of structures on individual lots. But Ron Matney testified that a "well-proportioned" structure is one that does not block views. 1RP at 55-57.
¶ 37 Mr. Caravello also disputes that finding No. 13, that Board member Ray Dirks informed him "right away" of his concerns about the size of the structure, is not supported by substantial evidence. Mr. Dirks testified to this. 3RP at 357.
¶ 38 Mr. Caravello disputes finding No. 16, that no other outbuildings in the lower part of the subdivision are more than 1½ stories, disproportionate to the primary structure, or used as a residence. He says Ron Matney testified that he was aware of two-story outbuildings. And a Board member testified that he has a loft over his garage. Both, he notes, are residential uses. However, the court cites to the record for these findings.[3] The judge also visited the site.
¶ 39 Finding No. 17 says Mr. Caravello's garage is three stories. He disputes the evidence for this. He contends, moreover, that the covenants contain no height restriction. The Wimberlys' expert, Nicolee Bradbury, testified, however, that the legal description of Mr. Caravello's building was a three-story residential structure.
¶ 40 Mr. Wimberly does not respond to Mr. Caravello's final assignment of error to the findings. Mr. Carvello contends that finding 19, that he failed to prove ongoing harassment by Mr. Wimberly, is belied by Mr. Caravello's allegation that Mr. Wimberly threatened to kill his wife. But this finding has no relevance to the interpretation of these covenants. It would only support Mr. Caravello's "clean hands" argument, which we take up later in the opinion.
¶ 41 We affirm the challenged findings.
¶ 42 The finder of fact weighs the evidence; we review the record to determine whether substantial evidence supports the findings. Dickson v. Kates, 132 Wash.App. 724, 730-31, 133 P.3d 498 (2006). Witness testimony is substantial evidence. Dalton v. State, 130 Wash.App. 653, 667, 124 P.3d 305 (2005). We have already concluded that the trial court properly admitted extrinsic evidence from the drafters of the covenants. And the record is replete with evidence that the purpose of the covenants was to protect views by limiting the number and size of buildings on each lot. In addition to his trial testimony, Ron Matney filed a declaration that the restrictions were "to prevent a crowded look to the area and to limit the size of structures so as to avoid the obstruction of views of the Columbia River." CP at 242. The court's findings are amply supported by this record.
INJUNCTIVE RELIEF
¶ 43 Mr. Caravello next argues that the Wimberlys failed to show how they would be harmed by his building. And he argues that interference with a view is not actionable absent an easement or statutory right. For this Mr. Caravello cites Collinson v. John L. Scott, Inc.[4] But there the plaintiffs relied solely on common law nuisance. They had no covenant or other legal right of action. Mr. Caravello reasserts that the covenants here do not contain the word "view." Moreover, he now contends, the evidence does not show that Mr. Wimberly's view was obstructed.
¶ 44 We review a trial judge's decision to grant an injunction for abuse of discretion. Lansdowne, 120 Wash.App. at 423, 85 P.3d 950; Niemann v. Vaughn Cmty. Church, 154 Wash.2d 365, 374, 113 P.3d 463 (2005).
¶ 45 The court may consider a number of factors. These include the availability of other adequate remedies, misconduct by the plaintiff, and the relative hardship if injunctive relief is granted or denied. Hollis v. Garwall, Inc., 88 Wash.App. 10, 16, 945 P.2d *410 717 (1997), aff'd, 137 Wash.2d 683, 974 P.2d 836 (1999). These factors are not, however, essential elements for the grant of injunctive relief. Hollis, 88 Wash.App. at 16, 945 P.2d 717.
¶ 46 Here, the court determined that the Wimberlys' property rights had been invaded. And he faced actual and substantial injury. Mr. Caravello refused to bring his construction into compliance with the covenants absent an injunction. He would have continued to impair the Wimberlys' enjoyment and use of their property and its dollar value, a valuable property right conferred by the covenants. See id.
¶ 47 The court may withhold even a mandatory injunction if it believes the injunction would be oppressive, if it finds the offending party "did not simply take a calculated risk, act in bad faith, or negligently, willfully or indifferently locate the encroaching structure." Arnold v. Melani, 75 Wash.2d 143, 152, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968). The court may also consider whether the damage is slight and the benefit of removal is equally small. Or it may consider the feasibility of modifying the structure as built and whether there is an "enormous disparity in resulting hardships." Id.
¶ 48 In Foster v. Nehls,[5] the court ordered a second story removed because it violated covenants. The court held that the right to full enjoyment of a particular piece of land cannot be compensated by money and should be restored by an equitable remedy. Foster, 15 Wash.App. at 753, 551 P.2d 768. Here, the court did not find that an injunction would be oppressive, and none of the reasons to withhold an injunction is present. Mr. Caravello calculated that his neighbors would not assert their rights once the construction reached a critical stage. At best, Mr. Caravello was indifferent to their interests.
¶ 49 The impairment of the views of surrounding view lots is substantial. And the benefit of removing the obstruction is equally great.
¶ 50 The court did not abuse its discretion by issuing a mandatory injunction on these facts. It was also within the court's discretion to disregard alleged financial hardship to Mr. Caravello resulting from the injunction. Mr. Caravello forfeited the benefit of balancing relative hardship by proceeding with construction after receiving notice he was invading the property rights of his neighbors. Hollis, 88 Wash.App. at 16, 945 P.2d 717 (citing Bach v. Sarich, 74 Wash.2d 575, 445 P.2d 648 (1968)). Mr. Caravello was warned of impending objections as soon as the planned dimensions of his structure became known. He further added to the costs of complying with the injunction by ignoring the Wimberlys' summons and complaint.
¶ 51 The trial judge did not abuse his discretion.
ATTORNEY FEES
¶ 52 Covenant provision XI provides that a person prevailing in an action to enforce the covenants is entitled to reasonable attorney fees. Where, as here, the trial court awarded fees to a party, that party may also recover fees on appeal. Landberg v. Carlson, 108 Wash.App. 749, 758, 33 P.3d 406 (2001).
¶ 53 We affirm the order of the trial court and award the Wimberlys reasonable attorney fees on appeal, subject to compliance with RAP 18.1(d).
WE CONCUR: Brown, and Kulik, JJ.
NOTES
[1] Riss v. Angel, 131 Wash.2d 612, 934 P.2d 669 (1997).
[2] Berg v. Hudesman, 115 Wash.2d 657, 801 P.2d 222 (1990).
[3] Exs. P 32, 33, 34, 35, 36, 38, 40; D 130 & 132.
[4] Collinson v. John L. Scott, Inc., 55 Wash.App. 481, 488, 778 P.2d 534 (1989).
[5] Foster v. Nehls, 15 Wash.App. 749, 551 P.2d 768 (1976).