FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2019 FEB -5 AM 10: 37



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KILO 6 OWNERS ASSOCIATION, a
Washington nonprofit corporation; and
KILO SIX, LLC, a Washington
limited liability company,

        Appellants,

        v.

EVERETT HANGAR LLC, a
Washington limited liability company,

        Respondent.

No. 77365-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 5, 2019

LEACH, J. — Kilo 6 Owners Association (the Association) and Kilo Six LLC (collectively Kilo) appeal the trial court's decision that Kilo Six's certification of lot 13 as "substantially complete" under the covenants, conditions, and restrictions (the CC&Rs) governing the Association is null and void. Kilo contends that judicial estoppel bars Everett Hangar's challenge to this certification. Kilo also claims that the trial court's interpretation of "substantially complete" conflicts with the express terms of the CC&Rs and with the parties' course of performance.

First, because Everett Hangar and Kilo both adopted positions in their earlier litigation inconsistent with their current positions, the trial court did not abuse its discretion by declining to apply the equitable doctrine of judicial estoppel to bar Everett Hangar's challenge. Second, the trial court gave the

words "complete" and "completion" their ordinary, usual, and popular meaning by adopting their dictionary definitions and adopted a common industry definition of "substantial completion." Using these definitions, the trial court did not err in finding that lot 13 was not substantially complete. We affirm.

BACKGROUND

Snohomish County (County) owns neighboring lots 11, 12, and 13 at the Snohomish County Airport (Paine Field). Historic Hangars LLC leases lot 11 and Kilo Six LLC leases lot 13. The Historic Flight Foundation (Foundation), a nonprofit entity that runs an aviation museum, subleases lot 11 from Historic Hangars. John Sessions owns all three of these entities. Dean Weidner owns Everett Hangar LLC, which leases lot 12. Historic Hangars and Everett Hangar own the hangars on lots 11 and 12, respectively. Lot 13 remains empty. Kilo Six has used lot 13 periodically for Paine Field and Foundation events and as parking for aircraft and vehicles.

To facilitate separate ownership and operation of the three lots, Kilo Six and the County executed the CC&Rs. The CC&Rs created the Association, which, in turn, enforces them. The Association has three members, Historic Hangars, Everett Hangar, and Kilo Six, each of which has a leasehold interest in one of the three lots. The CC&Rs assign voting rights to each member. These are equal to that member's "Percentage Interest" of the "Property" comprised of

-2-

lots 11, 12, and 13. Historic Hangars has 20 percent of the Association's voting rights, Everett Hangar has 34 percent, and Kilo Six has 46 percent. Section 9.1 of the CC&Rs limits voting eligibility:

> The Association is hereby authorized to levy assessments against each Lot for Association expenses as the Board may specifically authorize from time to time. There shall be three types of assessments: (a) Base Assessments to fund Common Expenses for the general benefit of all Lots, allocated in accordance with the respective Percentage Interests of the Lots. . . . [H]owever, no Base Assessments shall be levied against any Lot unless and until Declarant has certified to the Board that development of such Lot is substantially complete, and such Lot's Percentage Interest of Common Assessments shall, until such time, be allocated among the Lots for which such certification of substantial completion has been made by Declarant, pro rata in accordance with such Lots' relative Percentage Interests, and until such certification of substantial completion the Owner shall be a Member, but shall not be entitled to vote on Association matters.

(Emphasis added.) Kilo Six is the "Declarant" that has the authority to certify a lot as substantially complete.

In 2014, Everett Hangar sued Kilo Six, the Association, Historic Hangars, and the Foundation in Snohomish County Superior Court (Snohomish County lawsuit), claiming they violated multiple provisions of the CC&Rs. After a bench trial, the trial court awarded Everett Hangar some injunctive relief. But the court denied Everett Hangar's request to erect a fence around the lot 12 parking lot.

After the trial, Everett Hangar asked that the Association hold a membership meeting to vote on its proposal to build a perimeter fence. The day before this meeting, Everett Hangar e-mailed Sessions, stating that it wanted the

Association to apportion the common expenses previously allocated only to lots 11 and 12 to all three lots in the "same lot percentage allocation as the rest of the expenses." Sessions rejected this request. He stated that because lot 13 was undeveloped, Kilo Six should not be required to share in costs for services that it did not use, including landscape maintenance, parking maintenance, and garbage collection.

On January 12, 2016, during the meeting, Everett Hangar asserted that lot 13 was ineligible to vote on Association matters because Kilo Six had not certified it as substantially complete under section 9.1 of the CC&Rs. Kilo Six had not declared any of the lots substantially complete. Sessions adjourned the meeting without a vote on the fence proposal. On January 21, Sessions sent a letter to the Association board members, certifying lots 11, 12, and 13 as substantially complete under section 9.1 of the CC&Rs. Everett Hangar responded that the certificate was ineffective because Kilo Six had not yet built a hangar on lot 13.

Kilo then filed this lawsuit, asking the court to declare that lot 13 is eligible to vote on Association matters. Everett Hangar filed a counterclaim, asking the court to declare that Kilo Six is not eligible to vote on Association matters until the development of lot 13 is substantially complete as required by the CC&Rs. Everett Hangar also asserted that Kilo Six violated its duty of good faith and fair

dealing by issuing the certificate of substantial completion for lot 13.

After a bench trial, the trial court (1) denied plaintiffs' request for declaratory relief, (2) declared the Association's lot 13 certification null and void because lot 13 is not substantially complete, (3) concluded that judicial estoppel did not bar Everett Hangar from challenging Kilo Six's right to vote, (4) held that the Association breached the duty of good faith and fair dealing it owed to Everett Hangar by certifying lot 13's development as substantially complete, and (5) awarded Everett Hangar attorney fees. Kilo appeals.

ANALYSIS

Judicial Estoppel

First, Kilo claims that the trial court abused its discretion by not applying judicial estoppel to bar Everett Hangar's challenge to Kilo Six's right to vote. We disagree.

The equitable doctrine of "[j]udicial estoppel 'precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' It is intended to protect the integrity of the courts but is not designed to protect litigants."[1] Courts examine three factors to decide whether judicial estoppel applies: (1) did a party assert a position inconsistent with an earlier one, (2) would acceptance of the position create the

---

[1] Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015) (internal quotation marks omitted) (quoting Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).

perception that a party misled a court in either proceeding, and (3) would the party asserting the inconsistent position receive an unfair advantage or impose an unfair detriment.[2]   But these factors are not an "exhaustive formula."[3] "[C]ourts must apply judicial estoppel at their own discretion; they are not bound to apply it but rather must determine on a case-by-case basis if applying the doctrine is appropriate."[4]   This court reviews a trial court's decision to apply judicial estoppel for abuse of discretion.[5]   A trial court abuses its discretion when it bases its decision on untenable grounds or reasons.[6]

*A. Inconsistent Positions*

Kilo asserts that Everett Hangar's claim that Kilo Six is ineligible to vote is inconsistent with the position that it asserted throughout the Snohomish County lawsuit. We agree.

In the Snohomish County lawsuit, Everett Hangar sought injunctive relief, claiming that the Association, Kilo Six, Historic Hangars, the Foundation, and Sessions violated an easement and safety and security provisions of the CC&Rs. Everett Hangar asserted in its amended complaint, at summary judgment, and at trial that Sessions controlled two thirds of the Association's voting interest. Everett Hangar, in its opening statement at trial, stated,

---

[2] Arp, 192 Wn. App. at 92.

[3] Arp, 192 Wn. App. at 92.

[4] Arp, 192 Wn. App. at 92.

[5] Arp, 192 Wn. App. at 91.

[6] Harris v. Fortin, 183 Wn. App. 522, 527, 333 P.3d 556 (2014).

> Mr. Sessions, through the various defendant entities he controls, owns and exercises complete domination—complete dominion rather over Lot 11 and Lot 13 and <u>controls the owners association that manages all the lots. That is not in controversy.</u> Documents are set up to give him control over the association, because voting rights are based on the square footage of the leasehold, and <u>the combination of the Lot 11 leasehold, which is the smallest of the three and Lot 13 vacant lot adds up to 66 percent. So he has complete control over the owners association,</u> and that will become significant in a moment.

(Emphasis added.)

Here, Everett Hangar claims that because lot 13 is not substantially complete, Kilo Six does not have the right to vote lot 13's percentage interest on Association matters. As a result, Sessions does not have the controlling votes on the Association's board. This position is inconsistent with its previous position that Sessions controlled the Association. Substantial evidence supports the trial court finding that Everett Hangar asserted an inconsistent position in the Snohomish County litigation.

*B. Reliance*

Kilo next claims that the Snohomish County Superior Court's acceptance of Everett Hangar's inconsistent position creates a perception that either the Snohomish County court or the trial court in this litigation was misled. We disagree.

The Snohomish County Superior Court did, in fact, accept Everett Hangar's inconsistent position. The court concluded that "Mr. Sessions has the

controlling votes on [the Association's] Board, by virtue of the number of shares he holds for Lots 11 and 13. Accordingly, the Court finds that Mr. Sessions is functionally in control of all four organizations." But, here, the trial court found that Everett Hangar's inconsistent position does not create the perception that either court was misled because the record does not show that the inconsistency was material to the outcome of the Snohomish County lawsuit or that Kilo Six relied on Everett Hangar's inconsistent position to its detriment. Judicial estoppel does not require that the previously accepted position be material to the outcome in the later proceeding. But the materiality of the position can affect whether the inconsistency creates the perception that either court was misled.

The parties did not dispute Kilo Six's voting rights in the Snohomish County lawsuit. In response to Everett Hangar's change of venue request in this litigation, Kilo Six stated, "The [Snohomish County] trial had nothing to do with the parties' voting rights in the Association." In addition, the Snohomish County Superior Court entered the amended permanent injunction against only Historic Hangars and the Foundation based on violations of the easement and the safety and security provisions of the CC&Rs. The court did not enjoin conduct by the Association or Kilo Six. Because the earlier lawsuit was unrelated to Kilo Six's voting rights and the trial court in this lawsuit reviewed de novo whether Kilo Six had the right to vote lot 13's percentage interest, substantial evidence supports

its finding that Everett Hangar's inconsistent position did not create the perception that either the Snohomish County Superior Court or the trial court was misled.

C. *Equity*

Kilo also claims that Everett Hangar's inconsistent position benefited it. We disagree.

Kilo asserts that Everett Hangar will receive an unfair benefit if this court affirms the trial court's decision because Kilo Six cannot exercise lot 13's voting percentage interest. They claim that this judgment would not have been available to Everett Hangar in the Snohomish County lawsuit in which it successfully asserted that Sessions controlled the Association's votes.

But, consistent with the trial court's finding, Kilo also took a position in the Snohomish County lawsuit that is inconsistent with their position here. There, the parties did not contest that lot 13 remained undeveloped and "vacant."[7] Similarly, in response to the Association's 2016 proposed budget, Everett Hangar e-mailed Sessions, stating that it would like the Association to allocate expenses previously assigned to only lots 11 and 12 to all three lots "in the same lot percentage allocation as the rest of the expenses" because "so much time has passed and . . . Lot [13] . . . has not yet been constructed." Sessions responded

_____

[7] Everett Hangar, LLC v. Kilo 6 Owners Ass'n, No. 73504-7-I, slip op. at 3 (Wash. Ct. App. Aug. 8, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/735047.pdf.

that because lot 13 remained undeveloped, it did not require the same maintenance as lots 11 and 12. But "[w]hen developed, it should participate pro rata as it will cause all of [the maintenance] expenses to increase." By contrast, just 10 days after this e-mail exchange, and after Everett Hangar asserted that lot 13 was ineligible to vote on Association matters because Kilo Six had not certified lot 13 as substantially complete, Kilo Six certified lot 13 as substantially complete. Similar to the trial court, we conclude that because both parties have taken inconsistent positions, not applying judicial estoppel to bar Everett Hangar's claims would not provide either party an unfair advantage or cause either party an unfair detriment.

The trial court did not abuse its discretion by deciding not to apply judicial estoppel to bar Everett Hangar's claim.

## The CC&Rs

Kilo next challenges the trial court finding that Kilo Six abused its discretion when it certified lot 13 as "substantially complete." We disagree.

To interpret a restrictive covenant, a court looks to the intent of the drafters.[8] To determine the intent of the contracting parties, a court applies contract interpretation rules.[9] This means it "view[s] the contract as a whole, its subject matter and objective, the circumstances surrounding its making, the

---

[8] Wimberly v. Caravello, 136 Wn. App. 327, 336, 149 P.3d 402 (2006).
[9] Wimberly, 136 Wn. App. at 336.

-10-

subsequent acts and conduct of the parties, and the reasonableness of the interpretations advocated by the parties."[10] A court "generally give[s] words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."[11] A court may consider extrinsic evidence about the circumstances under which the parties formed the contract to help it decide the parties' intent.[12]

*A. Standard of Review*

An appellate court reviews challenged findings of fact for substantial evidence.[13] Substantial evidence requires "a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true."[14] This court reviews questions of law de novo.[15] "The parties' intentions [in entering into a contract] are questions of fact, while the legal consequences of such intentions are questions of law."[16] We review de novo mixed questions of law and fact when the parties do not dispute the facts.[17]

---

[10] Wimberly, 136 Wn. App. at 336.

[11] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005).

[12] Wimberly, 136 Wn. App. at 336.

[13] Pardee v. Jolly, 163 Wn.2d 558, 566, 182 P.3d 967 (2008).

[14] Pardee, 163 Wn.2d at 566.

[15] Pardee, 163 Wn.2d at 566.

[16] Pardee, 163 Wn.2d at 566.

[17] Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 441, 191 P.3d 879 (2008).

Here, Everett Hangar asserts that this court should use the substantial evidence standard because Kilo disputes some factual issues. Because Kilo does not dispute the facts underlying the parties' intent or course of performance and this court reviews mixed questions of law and fact de novo, we use the de novo standard.

B. *The Plain Language of the CC&Rs*

First, Kilo asserts that the trial court's use of a statutory definition of "substantial completion" contradicts express terms in the CC&Rs. We reject this claim.

The CC&Rs do not define "substantially complete." The trial court relied on the dictionary definitions of "completion" and "complete." "'Completion' is defined as the 'act or action of completing, becoming complete, or making complete.'" "'Complete' is, in turn, defined as 'possessing all necessary parts, items, components, or elements'; 'brought to an end or to a final or intended condition'; and 'fully realized' or 'carried to the ultimate.'"[18] Because the trial court found that "substantial completion" was a term commonly used in the construction industry, it also relied on the definition from RCW 4.16.310, a statute about claims arising from construction. RCW 4.16.310 defines "substantial completion" as "the state of completion reached when an improvement upon real

---

[18] Mattingly v. Palmer Ridge Homes LLC, 157 Wn. App. 376, 394, 238 P.3d 505 (2010) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 465 (2002)).

property may be used or occupied for its intended use." Applying these definitions to section 9.1 of the CC&Rs, the trial court found that a "Lot," as defined in the CC&Rs, is "substantially complete when the improvements have been completed sufficient to allow the property to be occupied for its intended use."

The trial court viewed the CC&Rs holistically and concluded that the circumstances surrounding the drafting of the CC&Rs, including evidence about why the parties incorporated "substantially complete" into the CC&Rs, support using the ordinary and usual meaning of "substantially complete." The court also concluded that witness testimony, the lot 13 lease, and other governing documents discussed below also show that lot 13 is substantially complete only with a hangar.

First, the trial court relied on the testimony of Roger Collins, cofounder and former comanager of Kilo Six. Collins testified that he asked Sessions to add the "substantially complete" language to section 9.1 when Sessions stated that he did not believe that lot 13 should have to pay for certain base assessments as long as it remained undeveloped. Collins told Sessions that because the project was undeveloped, Sessions should be free from paying dues, but, consequently, Sessions could not vote those shares on Association business. Sessions did not dispute this testimony.

Collins also testified that he and Sessions leased the lots from Paine Field to build three separate hangars, including one on lot 13. He stated that at no point during his tenure as coowner and comanager of Kilo Six did the development of lot 13 contemplate a lot without a hangar on it. And he stated that Everett Hangar purchased the lot 12 hangar, in part, based on the promised construction of a hangar on lot 13. Collins testified that as it sits today, lot 13 is not substantially complete.

Additional witness testimony and the lot 13 lease also show that the parties intended lot 13 to be substantially complete only with a hangar. Weidner testified that Kilo Six repeatedly represented to him that lot 13 would be developed with a hangar. Similarly, Sessions and the witnesses for Paine Field testified that the lot 13 lease requires Kilo Six to build a hangar on it, and Paine Field expects Sessions to do so. Although the lot 13 lease gives Kilo Six the right to decide when to construct the hangar, it requires Kilo Six to build a hangar on the lot when economically feasible to do so.

In addition, a number of other governing documents show that Kilo Six intended lot 13 to have a hangar:

1. The original lease between Kilo Six and the County shows a hangar on what is now lot 13.

-14-

2.    The purchase and sale agreement between Weidner and Kilo 6 for Weidner's purchase of the lot 12 hangar states, "[Kilo 6] intends to improve the leased property so that there will be three separate hangars on the leased property."

3.    The CC&Rs state, "Because of the nature of the anticipated use of the Property as an aircraft hangar facility for working aircraft, safety and security are of particular concern."

4.    Kilo Six's amended operating agreement states, "[Kilo Six] shall continue to pursue efforts to construct an aircraft hangar on Lot 13, and thereafter shall operate or lease Lot 13 and the hangar constructed thereon, or shall sell and transfer such Lot 13 Lease and hangar."

Kilo contends that the trial court's interpretation of "substantially complete" conflicts with two express CC&R provisions. First, Kilo notes that the CC&Rs do not say that a building must be constructed on lot 13 for it to be substantially complete and do not limit the Association's sole discretion to certify lot 13 as substantially complete. But the CC&Rs do limit the Association's discretion to certify a lot as substantially complete until the lot is actually substantially complete. And the CC&Rs do not define "substantially complete." So the trial court followed contract interpretation principles to "define substantially complete." It adopted the phrase's ordinary meaning by relying on both the dictionary

definitions of "completion" and "complete" and the common industry definition of "substantial completion." We find Kilo's claim of conflict unpersuasive.

Second, Kilo maintains that the CC&Rs state that the Association need certify only a lot, not a building, as substantially complete. The CC&Rs define "Lot" as the "ground leasehold interest in such Lot." They define "Building" as "[a]ny building, aircraft hangar, storage shed, or other improvement on the Property that has one or more walls and a roof or overhead cover." Section 9.1 states, "[N]o Base Assessments shall be levied against any Lot unless and until Declarant has certified to the Board that development of such <u>Lot</u> is substantially complete." (Emphasis added.) Kilo asserts that the CC&Rs assignment of different definitions to "Lot" and "Building" means that the Association need certify only a Lot as substantially complete to levy base assessments on it and that it need not have a hangar on it to qualify for this certification. But, again, because the CC&Rs do not define "substantially complete" and the provisions that Kilo relies on do not establish what the drafters intended it to mean, this argument is unpersuasive.

Kilo does not show that the definitions the trial court relied on or the court's finding that lot 13 is not substantially complete conflict with any provisions of the CC&Rs.

## C. The Parties' Course of Performance

Kilo also asserts that the trial court misapplied the parties' course of performance doctrine. We disagree.

A court may explain or supplement contractual terms with the parties' course of dealing, usage of trade, or course of performance.[19] The parties' "'course of performance' refers to '[a] sequence of previous performance by either party after an agreement has been entered into, when a contract involves repeated occasions for performance.'"[20] "[T]he express terms of an agreement and any applicable course of performance . . . must be construed whenever reasonable as consistent with each other."[21] If unreasonable, "[e]xpress terms prevail over course of performance."[22]

The trial court concluded that the parties' course of performance did not support Kilo Six's claim that all members accepted lot 13 as substantially complete or that Kilo Six has the right to vote. Kilo claims that the trial court improperly disregarded the parties' course of performance. It notes that lot 13 paid some base assessments that it would not have done if the parties did not consider it substantially complete.

---

[19] Morgan v. Stokely-Van Camp, Inc., 34 Wn. App. 801, 805, 663 P.2d 1384 (1983).

[20] Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County, 164 Wn. App. 641, 661, 266 P.3d 229 (2011) (alteration in original) (quoting BLACK'S LAW DICTIONARY 405 (9th ed. 2009)).

[21] RCW 62A.1-303(e).

[22] RCW 62A.1-303(e)(1).

Kilo relies on Everett Hangar's answers to certain allegations in their complaint to show that Everett Hangar admitted that Kilo Six paid some base assessments and not others with Everett Hangar's permission. Kilo alleged in their complaint,

> Since the Association's inception, each Member has paid Association base assessments. With Everett Hangar's consent, Kilo Six paid Association base assessments only for services Kilo Six consumed, such as mowing and irrigation. With Everett Hangar's consent, Kilo Six did not contribute to assessments for other services, such as landscaping and garbage collection, that were not consumed by Kilo Six. This was true even under Association budgets originally prepared and proposed by Everett Hangar.

In Everett Hangar's answer, it "admit[ted] the allegations in this paragraph."

Kilo also relies on Everett Hangar's answer that to the allegation that

> Everett Hangar took the position on January 12, 2016 that the development of Lot 13—which was originally intended to include an aircraft hangar for Historic Flight Foundation—is not substantially complete, and that Lot 13's Owner, Kilo Six, therefore cannot vote on Association matters pursuant to Section 9.1 of the CC&Rs, even though Kilo Six had been charged and had paid base assessments since the Association's inception.

Everett Hangar responded, "[It] admits the allegations of this paragraph, and further responds that it was Kilo Six who, at the January 12, 2016 meeting, stated and confirmed that development of Lot 13 was not substantially complete."

Further, Kilo alleged in their complaint that "[a]t the January 12, 2016 meeting, Everett Hangar argued that Kilo Six was entitled to a refund of all

Association assessments paid by Kilo Six to date." Kilo relies on Everett

Hangar's response:

> [It] admits that, at the January 12, 2016 meeting, it offered to vote in favor of refunding the Association base assessments paid for [by] undeveloped Lot 13 provided that Kilo Six abide by the other consequences of its failure to develop the lot pursuant to Section 9.1 of the CC&Rs. Everett Hangar otherwise denies the allegations in this paragraph.

Everett Hangar's responses show that the Association charged lot 13

some base assessments. But consistent with the trial court's reasoning, the

parties' course of performance does not clarify whether the parties' believed that

lot 13 was substantially complete; it does not support Kilo Six's position that the

parties' course of performance establishes that the parties treated lot 13 as

substantially complete for two reasons.

First, substantial evidence supports the trial court finding that the parties'

course of performance was inconsistent with the clear and express terms of the

CC&Rs. Although whenever possible the express terms of the agreement and

the parties' course of performance should be construed as consistent with one

another, this is not possible here. The parties agree that Kilo Six first certified

lots 11, 12, and 13 as substantially complete on January 21, 2016, after Everett

Hangar challenged lot 13's voting eligibility. Even so, as discussed above, the

parties annually assessed at least some base assessments to the owners of

each lot. This conduct conflicts with section 9.1. Until Kilo Six certified any lot to

be substantially complete, the Association should not have assessed any base assessments against that lot. When the express terms of the CC&Rs and the parties' course of performance cannot be reconciled, the express terms prevail. And, as discussed above, based on the dictionary and common industry definitions of "substantially complete," lot 13 was not substantially complete.

Second, the trial court noted that although lot 13 paid some of the maintenance costs levied against the lots, it refused to pay all of the base assessments that lots 11 and 12 paid. As discussed above, in January 2016, Kilo Six refused to pay for a number of base assessments, including landscape maintenance, parking lot maintenance, storm drain maintenance, and garbage costs. And that same month, Everett Hangar offered to vote in favor of refunding lot 13 the base assessments that it had paid. Because the parties' course of performance shows that lot 13 paid only some base assessments and Everett Hangar was in favor of lot 13 paying more or less base assessments at different periods, the trial court did not err in concluding that the parties' course of performance does not show that all members considered lot 13 substantially complete.

D. *The Duty of Good Faith and Fair Dealing*

Last, Kilo challenges the trial court decision that Kilo Six violated its duty of good faith and fair dealing by certifying lot 13 as substantially complete.

"[W]hen a party has discretion over a future contract term, it has an implied duty of good faith and fair dealing in setting and performing that contractual term."[23] This court reviews a breach of contract finding, including the implied duty of good faith and fair dealing, for substantial evidence.[24]

Kilo challenges the trial court's conclusion that Kilo Six violated its duty of good faith and fair dealing on one ground—that the trial court erred in concluding that lot 13 must have a hangar to be substantially complete. As discussed above, we conclude that the trial court did not err in deciding that lot 13 is not substantially complete without a hangar. Accordingly, we reject Kilo's claim.

### Attorney Fees

Everett Hangar requests attorney fees on appeal under the CC&Rs and RAP 18.1. RAP 18.1 allows a reviewing court to award a party reasonable attorney fees if applicable law grants a party the right to recover them. Here, the CC&Rs state, "In any action to enforce the provisions of this Declaration or Association rules, the prevailing party shall be entitled to recover all costs, including, without limitation, reasonable attorneys' fees and court costs, reasonably incurred in such action." Because this lawsuit concerns whether lot 13 is substantially complete under the CC&Rs, we award Everett Hanger

---

[23] Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 115, 323 P.3d 1036 (2014).

[24] Frank Coluccio Constr. Co. v. King County, 136 Wn. App. 751, 762, 764, 150 P.3d 1147 (2007).

attorney fees on appeal as the substantially prevailing party, subject to its compliance with RAP 18.1(d).

## CONCLUSION

Judicial estoppel does not bar Everett Hangar's challenge to Kilo Six's voting. The trial court did not err in finding that lot 13 is not "substantially complete" based on the ordinary and usual meaning of the phrase and the parties' intended use of lot 13. We affirm.

Leach, J.

WE CONCUR:

Dwyer, J.

Appelwick, C.J.