[No. 38981-9-II. Division Two. ugust 5, 2010.]

STEVEN MATTINGLY ET AL., *Appellants*, v. PALMER RIDGE HOMES, LLC, ET AL., *Respondents*.

*Shane L. Yelish* (of *Reed Longyear Malnati & Ahrens*), for appellants.

*Thomas F. Gallagher* (of *Law Offices of Watson & Gallagher PS*); *Betsy A. Gillaspy* (of *Salmi & Gillaspy PLLC*); and *Timothy J. Repass* (of *Lee Smart PS*), for respondents.

¶1 VAN DEREN, J. — Steven and Deborah Mattingly appeal the trial court's order granting summary judgment to Palmer Ridge Homes based on limitations contained within a construction contract and a third party home warranty that Palmer Ridge supplied to the Mattinglys. The Mattinglys argue that (1) Palmer Ridge's failure to supply the booklet outlining the terms of the warranty demonstrates procedural unconscionability, (2) consideration did not support the limitations in the warranty, (3) they did not intend the warranty to limit their ability to bring an action against Palmer Ridge, (4) the warranty did not effectively disclaim implied and express warranties, and (5) the construction contract's one year limitation on suit should have begun when items on the inspection checklist (punch list) were completed and not at the time of substantial completion. We affirm the order granting summary judgment in part on other grounds but reverse and remand for further proceedings to determine if or when Palmer Ridge completed the punch list items or ceased work at the Mattinglys' home. If the Mattinglys sued within one year of completion of the punch list or cessation of work at the Mattinglys' home, the trial court must determine Palmer Ridge's liability for items on the punch list or damage covered by express warranties in the construction contract. We also vacate the trial court's attorney fees award to Palmer Ridge and remand for further proceedings, after which attorney fees and costs for trial and the appeal may be determined.

## FACTS

¶2 On December 28, 2005, the Mattinglys signed an agreement with Palmer Ridge to purchase a five acre lot in

Roy, Washington. On January 12, 2006, the Mattinglys agreed[1] to pay Palmer Ridge $563,750[2] to erect a custom home on the lot. The construction contract set out Palmer Ridge's duties:

6.1 All work shall be in accordance to the provisions of the plans and specifications. All systems shall be in good working order.

6.2 All work shall be completed in a workman like manner, and shall comply with all applicable national, state and local building codes and laws.

6.3 All work shall be performed by licensed individuals to perform their said work, as outlined by law.

6.4 Contractor shall obtain all permits necessary for the work to be completed.

6.5 Contractor shall remove all construction debris and leave the project in broom clean condition.[3]

Clerk's Papers (CP) at 358-59. The construction contract also explained, "Upon completion, the project shall be inspected by the Owner and the Contractor, and any repairs necessary to comply with the contract documents shall be made by the Contractor." CP at 361.

¶3 The construction contract restricted the Mattinglys' ability to bring an action against Palmer Ridge in court:

At the completion of this project, Contractor shall execute an instrument to Owner warranting the project for one year against defects in workmanship or materials utilized. The manufacturers['] warrant[ies] will prevail. No legal action of any kind relating to the project, project performance or this contract shall be initiated by either party against the other

---

[1] The Mattinglys "extensively negotiated and modified" the construction contract. Clerk's Papers (CP) at 29.

[2] Part of the cost for the construction contract included $1,500.00 for an "[e]xtended" warranty. CP at 286. At the time of enrollment, a warranty through the 2-10 Home Buyers Warranty new home warranty program cost $1,691.25.

[3] The parties clarified the provision: "At the time of the walk-through and punch-list creation with the Mattingly[ ]s, the home will have already been put into 'move-in' condition and/or will be broom clean." CP at 363.

party after one year beyond the completion of the project or cessation of work.

CP at 360.

¶4 On May 18, 2006, the land purchase and construction contract closed. On June 5, the Mattinglys signed a deed of trust for the property and they signed an application for enrollment in the 2-10 Home Buyers Warranty new home warranty program (2-10 HBW warranty). As part of the enrollment, the Mattinglys acknowledged that they "read a sample copy of the Warranty Booklet, and CONSENT TO THE TERMS OF THESE DOCUMENTS" and that they "further understand that when the warranty is issued on [their] new home, it is an Express Limited Warranty and that all claims and liabilities are limited to and by the terms and conditions of the Express Limited Warranty as stated in the 2-10 HBW® Booklet." CP at 291. But the Mattinglys did not, in fact, see a copy of the sample warranty booklet before they signed the enrollment application, did not understand that the 2-10 HBW warranty limited their ability to bring suit under the construction contract, and did not intend to waive express warranties by Palmer Ridge in the construction contract.[4]

¶5 Construction proceeded and continued until the Mattinglys signed a certificate of substantial completion on April 1, 2007. The certificate of substantial completion stated:

> The work performed under the Contract Documents for the before mentioned project, has been reviewed and found to be substantially complete. The owner and contractor further acknowledge and agree as follows:
>
> . . . .
>
> 3. An Inspection Check List of items to be completed on the project has been listed by the Owner and is attached to this document. The Inspection Check List details items that have not been properly constructed or are not in proper

---

[4] The Mattinglys did not receive a copy of the booklet until sometime after they moved into the house in May 2007.

condition. Except as noted on the Inspection Check List, the owner accepts the project as is and understands from now on the owner will not have a claim against the contractor for overlooking any item that was not listed that could have been seen during the owner's inspection.

4. The owner understands that the duration of all implied warranties has been limited to one (1) year from the date of final payment or the date of occupancy, whichever comes first. The owner understands that no warranties are being made by the contractor, except those in the written Limited Warranty provided by the contractor as part of the Contract Documents. Accepting the Limited Warranty, the owner will have no right to recover or receive compensation for any incidental, consequential, secondary, punitive or special damages nor any costs or attorney[ ] fees.

5. The date of Substantial Completion is hereby established as: **March 30th, 2007** which is also the date of all applicable warranties required by the Contract Documents, except as stated below.

6. The Contractor will complete or correct the work on the attached Inspection Check List [(punch list)] within 10 days,[5] from the date of the Inspection Check List completion, by the owner.

**ACCEPTANCE**

The Owner accepts the project as substantially complete and will assume full possession after said Inspection Check List [(punch list)] is completed and full payment is received by Contractor.

CP at 183-84.

¶6 The Mattinglys and Palmer Ridge conducted a walk-through of the home where the Mattinglys could identify specific problems for Palmer Ridge to correct. The Mattinglys reviewed Palmer Ridge's generic punch list form but submitted a separate list with their concerns[6] on April 16. Although displeased with the list, Palmer Ridge appears

---

[5] The parties added, by hand, the material beginning at this first comma and ending at the period.

[6] The punch list included a plethora of items.

to have agreed with all of the items except for repairs to the asphalt.

¶7 On April 23,[7] the Mattinglys paid the remaining balance due on the construction contract. On May 14, Pierce County issued a final certificate of occupancy for the house. From May through October, Palmer Ridge worked with the Mattinglys to arrange various repairs. Palmer Ridge also repaired or attempted to correct additional problems that surfaced as the Mattinglys lived in the home while work on the punch list proceeded: The Mattinglys had uncovered new problems with window operation, sheetrock damage, the structure, and electrical circuits. Tensions and conflict between Palmer Ridge and the Mattinglys ran high as the repairs progressed. By September 24, Palmer Ridge believed it had addressed all of the items on the punch list. But at the end of October, Palmer Ridge continued working on leaks and other punch list items.

¶8 Unsatisfied with the condition of their home, in December, the Mattinglys hired a civil engineer to inspect their home. The civil engineer, who also works as a general contractor, found numerous problems with the construction and determined that Palmer Ridge did not complete the punch list:

> Based upon my site visit, review of the residence, and construction plans and specifications, I have determined that the construction work is not in accordance [with] the provision of the plans and specifications. Additionally, not all systems at the Mattingly's residence are in good working order.
>
> . . . I have determined that the construction work was not completed in a workman like manner and does not comply with applicable national, state, and local building codes and laws.
>
> . . . I have determined that that Palmer Ridge Homes and/or its subcontractors failed to return to the Mattingly residence to complete the punch list work.

---

[7] Although it is unclear when the Mattinglys moved into the home, the limitation on filing a lawsuit in the certificate of substantial completion seems to have begun running when the Mattinglys made their final payment on April 23, 2007.

. . . .

. . . The punch list is typically performed when the construction is substantially complete. The construction is not complete until all punch list items have been corrected or completed by the contractor. In my opinion, because the punch list items were not performed, Palmer Ridge . . . failed to complete construction of the Mattingly[s'] residence.

CP at 228-29.

¶9 The Mattinglys asserted the existence of a construction defect in February 2008, and they eventually arranged a joint inspection with Palmer Ridge's counsel at the end of May.[8] On August 29, Palmer Ridge offered to remedy some of the defects. The Mattinglys rejected Palmer Ridge's offer because it did not correct all of the issues and it did not include attorney fees.

¶10 On October 17, the Mattinglys sued Palmer Ridge for breach of contract, unjust enrichment, breach of warranty of habitability, and violation of the Consumer Protection Act.[9] Palmer Ridge moved for summary judgment, arguing that the period for a lawsuit under the construction contract had passed and, even had it not, the 2-10 HBW warranty excluded any remedy the Mattinglys may have had under the construction contract. Thus, Palmer Ridge argued, the Mattinglys' suit was either time barred or they had no justiciable claims against Palmer Ridge. The trial court granted Palmer Ridge's motion for summary judgment and dismissed the Mattinglys' complaint with prejudice. The Mattinglys unsuccessfully moved the trial court

[8] The Mattinglys submitted a claim on July 30, 2008, under the 2-10 HBW warranty's one year workmanship warranty, which the warranty company denied as untimely. On June 4, 2007, the Mattinglys received a telephone call from the 2-10 HBW warranty company that the one year warranty expired the next day. The Mattinglys alerted Palmer Ridge that the 2-10 HBW warranty technically expired on June 5, 2007, and the Mattinglys expressed concern that they had only recently moved into the home. Palmer Ridge checked into the issue. Without notifying the Mattinglys, the warranty company changed the effective date of the 2-10 HBW warranty to begin on April 17, 2007. The one year workmanship warranty expired while the parties tried to arrange the inspection.

[9] Ch. 19.86 RCW.

for reconsideration. The trial court awarded Palmer Ridge attorney fees.

¶11 The Mattinglys appeal.

## ANALYSIS

I. SUMMARY JUDGMENT

¶12 We review legal questions and an order of summary judgment de novo, performing the same inquiry as the trial court. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003); *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). We consider the facts and all reasonable inferences from them "in the light most favorable to the nonmoving party." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

¶13 Summary judgment is appropriate where "the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Jones*, 146 Wn.2d at 300-01; CR 56(c). "A material fact is one upon which the outcome of the litigation depends." *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). The burden is on the moving party to show there is no issue of material fact. *Balise*, 62 Wn.2d at 199. "The nonmoving party must set forth specific facts showing a genuine issue of material fact and cannot rest on mere allegations." *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989); CR 56(e).

II. ENFORCEMENT OF THE 2-10 HOME BUYER WARRANTY RESTRICTION ON REMEDIES

¶14 The Mattinglys argue that the trial court should not have enforced the 2-10 HBW warranty's limitation provisions because the Mattinglys did not have notice of the provisions, the provisions are buried in a 32 page booklet that they did not receive until they had moved in a year

later, and enforcement violates public policy.[10] Palmer Ridge argues that the 2-10 HBW warranty applies, that the warranty does not violate public policy, and that the Mattinglys' failure to file suit within the warranty's one year limitation period[11] bars the their action. Palmer Ridge further contends that the Mattinglys signed a form agreeing that they had read the warranty booklet and that they are bound by that agreement.

██ ¶15 Procedural unconscionability "relates to impropriety during the process of forming a contract" and refers to "blatant unfairness in the bargaining process and a lack of meaningful choice." *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975); *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518, 210 P.3d 318 (2009). "Whether an agreement is unconscionable is a question of law for the courts." *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008).

██ ¶16 "Procedural unconscionability is determined in light of the totality of the circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were 'hidden in a maze of fine print.'" *Torgerson*, 166 Wn.2d at 518-19 (internal quotation marks omitted) (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 391, 858 P.2d 245 (1993)). We do not apply these factors "mechanically without regard to whether in truth a meaningful choice existed." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995). "[T]hat an agreement is an adhesion contract does not necessarily render it procedurally unconscionable," but an adhesion contract is procedurally unconscionable where the party

---

[10] The Mattinglys' arguments and case citations point directly to procedural unconscionability as the legal theory supporting their contention that the 2-10 HBW warranty is unenforceable.

[11] Palmer Ridge notes that the warranty's effective date should have started on the date the county certified the home for occupancy.

lacks "meaningful choice." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304-05, 103 P.3d 753 (2004).

¶17 No published Washington case has addressed a similar type of warranty agreement or a similar set of circumstances at the enrollment agreement's signing. But California's Court of Appeal and Nevada's Supreme Court have confronted similar circumstances during enrollment in the 2-10 HBW warranty and have held the agreement procedurally unconscionable. *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884, 894-96, 71 Cal. Rptr. 3d 854 (2008); *Burch v. Second Judicial Dist. Ct.*, 118 Nev. 438, 443-44, 49 P.3d 647 (2002).

¶18 In the Nevada case,

> [t]he Burches did not receive a copy of the HBW's terms until after Double Diamond had paid the premium to enroll the Burch home in the warranty program and almost four months after they closed escrow on their home. Double Diamond told the Burches that the HBW's issuance was "automatic" and offered extra protection for their home, when in fact the warranty limited their protection under Nevada law. The Burches did not have an opportunity to read the one-page "application" form, or the thirty-one-page HBW booklet, or to view the HBW video before signing the "application." The arbitration clause was located on page six of the HBW booklet, after five pages of material only relevant to persons residing outside of Nevada. The Burches were not sophisticated consumers, they did not understand the HBW's terms, and the HBW's disclaimers were not conspicuous. Under these circumstances, the Burches did not have a meaningful opportunity to decide if they wanted to agree to the HBW's terms, including its arbitration provision. As a result, the HBW was procedurally unconscionable.

*Burch*, 118 Nev. at 443-44 (footnote omitted).

¶19 In *Baker*, a trial court concluded that the arbitration agreement in the 2-10 HBW warranty was procedurally unconscionable after making a number of findings:

> (1) the arbitration agreement was not included in the terms of any contract between the homebuyers and the builder, but was

instead included in a document that purported to be an application by the builder to obtain a warranty from HBW; (2) to the extent the Builder Application was intended to be an agreement between the builder and the homebuyer, its title was misleading; (3) the homebuyers did not sign the Builder Application when they executed their purchase and sale agreements with the builder, but instead, the Builder Application was presented to a homebuyer a day or so before the scheduled close of escrow; (4) the terms of the arbitration agreement were not set forth in the Builder Application, but were contained in documents that were not presented to the buyers before or when they signed the Builder Application and apparently were not available from the escrow officers; (5) a reasonable buyer would assume the arbitration agreement referred to in the Builder Application would govern any dispute with HBW regarding the terms of the warranty, not to disputes with the builder; and (6) there is no evidence the arbitration agreement was a negotiable term, and it appeared to be a contract of adhesion.

*Baker*, 159 Cal. App. 4th at 894-95. The California Court of Appeal reviewed the trial court's findings and held that the "trial court's factual findings of surprise and oppression are amply supported by evidence in the record, and the conclusion of procedural unconscionability is amply supported by the case law discussed above." *Baker*, 159 Cal. App. 4th at 896.

¶20 In another case, the California Court of Appeal reached a similar result:

Here, the trial court found that the arbitration provisions were part of a contract of adhesion. Although we are not bound by this finding, we agree with it. The reality of the transaction was that plaintiffs had to accept the arbitration provisions if they wanted to buy a house. The arbitration provisions were part of a preprinted form contract, presented on a take-it-or-leave-it basis. Even assuming that plaintiffs could have negotiated over some terms of the purchase and sale agreement, such as the purchase price, it seems apparent that any attempt to negotiate over the terms of the Warranty would have been fruitless, particularly because it arose out of a three-way

relationship between the homebuyer; HRD; and HBW, the administrator, which provided it as a package deal.

In addition, there is a strong showing of surprise. The arbitration provisions take up roughly one full page in a 30-page booklet. The entire booklet is in single-spaced, 10-point type. The arbitration provisions are not distinguished from the rest of the booklet by either bolding or capitalization.[12] The booklet, in turn, was buried in a "voluminous" stack of purchase and sale documents.

Most important, plaintiffs were never asked to sign or initial the booklet, much less the arbitration provisions; they were merely asked to sign the one-page application. Admittedly, the application did indicate—in capital letters—that the booklet contained binding arbitration provisions; however, it did not provide any information regarding their scope or effect. It also recited that the home buyer had read a sample booklet, even though plaintiffs were not actually given a sample booklet until after they had signed the whole stack of documents—sometimes not even until they had moved in. HRD's agents lessened any incentive plaintiffs might have had to read the booklet by describing the Warranty as a benefit or a bonus.

*Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293, 73 Cal. Rptr. 3d 395 (2008).

■ ¶21 Here, the Mattinglys did not receive a sample copy of the booklet to review before signing the enrollment application. The Mattinglys believed that the 2-10 HBW warranty would afford them protection in addition to that available under the construction contract. The Mattinglys state they did not intend the 2-10 HBW warranty to limit Palmer Ridge's liability under the construction contract. Nothing in the record shows that the Mattinglys had any knowledge of the booklet's contents, and the Mattinglys state they did not receive a copy of the booklet before they occupied the home. And even had the Mattinglys received the booklet, the provisions waiving implied and express

---

[12] Although the booklet has changed since *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293, 73 Cal. Rptr. 3d 395 (2008)—adding capital headings for some of these conditions, increasing the font size, and including bold typeface—it remains relatively similar.

warranties and limiting remedies appear on page 7 of a 32 page booklet—though the provisions are in bold and in a typeface slightly larger than the surrounding text.

¶22 Although "parties have a duty to read the contracts they sign," documents incorporated by reference usually must be reasonably available, at the least, so that the essentials of a contract can be discerned by the signer. *Del Rosario v. Del Rosario*, 152 Wn.2d 375, 385, 97 P.3d 11 (2004); *see Bogle & Gates, PLLC v. Zapel*, 121 Wn. App. 444, 448-49, 90 P.3d 703 (2004); *see also Webster v. State Farm Mut. Auto. Ins. Co.*, 54 Wn. App. 492, 497-98, 774 P.2d 50 (1989). The manner in which Palmer Ridge sold the 2-10 HBW warranty is suspect, as there is no evidence in the record that the Mattinglys had a reasonable opportunity to understand the terms contained within the booklet, and the terms remain buried in the booklet. We hold that the circumstances surrounding the 2-10 HBW warranty agreement's formation was procedurally unconscionable and that Palmer Ridge cannot enforce the 2-10 HBW warranty's limitations against the Mattinglys. As the 2-10 HBW warranty is unenforceable, it does not satisfy Palmer Ridge's obligations under the construction contract to supply a third party warranty. Thus, we next analyze whether the Mattinglys' claims survive under the construction contract and certificate of substantial completion.

III. LIMITATION OF SUIT PROVISION IN CONSTRUCTION CONTRACT

¶23 The Mattinglys argue that, if the construction contract's time limitation on filing suit applies, an issue of material fact exists about whether Palmer Ridge completed construction or work ceased more than a year before the Mattinglys sued. The Mattinglys further argue that the contract was not fulfilled and the work was not complete until Palmer Ridge completed items on the punch list. The Mattinglys also contend that they did not accept the project as complete, that work did not cease until after October 29, 2007, and that the contract required completion—not substantial completion—the date of which is a genuine issue of

material fact that precludes summary judgment. Palmer Ridge argues that it substantially completed work under the construction contract in May 2007,[13] which began the one year period to bring an action against Palmer Ridge, and uncompleted items on the punch list did not prevent completion. We agree with the Mattinglys' interpretation of "completion" in the construction contract and remand for further proceedings to determine the date of completion for the punch list items or, if incomplete, the date that work on the punch list items ceased.

¶24 We review the enforceability and interpretation of an unambiguous contractual time limit de novo. *See Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 77 Wn. App. 137, 141, 890 P.2d 1071 (1995). "Parties to a contract can agree to a shorter limitations period than that called for in a general statute." *Yakima Asphalt Paving Co. v. Dep't of Transp.*, 45 Wn. App. 663, 665, 726 P.2d 1021 (1986). And "a release required by the provisions of a contract is supported by the same consideration that supports the contract itself." *Yakima Asphalt Paving Co.*, 45 Wn. App. at 666-67. Unambiguous contractual time limits on actions are enforceable if they are not unconscionable, do not violate statute or public policy, and allow the plaintiff a reasonable period of time to ascertain and investigate the claim and prepare for the controversy.[14] *Syrett v. Reisner McEwin & Assocs.*, 107 Wn. App. 524, 527-30, 24 P.3d 1070 (2001); *Southcenter View Condo. Owners' Ass'n v. Condo. Builders, Inc.*, 47 Wn. App. 767, 771, 736 P.2d 1075 (1986); *Yakima Asphalt Paving Co.*,

---

[13] Palmer Ridge contends that the Mattinglys are estopped from arguing the home was not completed in May 2007 because they acknowledged the warranty began to run and stated in their original complaint that Palmer Ridge completed the house on May 14. The Mattinglys argue they are not estopped and note that Palmer Ridge does not set out the legal basis for its estoppel argument. As Palmer Ridge supplied inadequate legal authority to support its arguments, in violation of RAP 10.3(a)(6), we decline to address this issue. *See Saviano v. Westport Amusements, Inc.*, 144 Wn. App. 72, 84, 180 P.3d 874 (2008).

[14] If these conditions are met, the negotiation and particularity requirements for disclaimer of warranties do not apply. *See Southcenter View Condo. Owners' Ass'n v. Condo. Builders, Inc.*, 47 Wn. App. 767, 771, 736 P.2d 1075 (1986); *see also Schroeder*, 86 Wn.2d at 259-61.

45 Wn. App. at 665-66; *see also Ashburn v. Safeco Ins. Co. of Am.*, 42 Wn. App. 692, 695-99, 713 P.2d 742 (1986).

¶25 Article 13 of the construction contract limited the Mattinglys' ability to sue Palmer Ridge for one year "beyond the completion of the project or cessation of work." CP at 360. The construction contract did not define "completion" as "substantial completion." And the certificate of substantial completion made no reference to completion of project for purposes of the construction contract's limitation on suit. The certificate mentioned only that the date of substantial completion "is also the date of all applicable warranties required by the Contract Documents," which presumably referred to the third party warranty the contract obliged Palmer Ridge to supply. CP at 184. The certificate of substantial completion also excepted the punch list items from the start period for warranties and required completion of the list within 10 days of submission. CP at 184.

¶26 When we construe contracts, the words used "must be given their usual and ordinary meaning." *Honeywell, Inc. v. Babcock*, 68 Wn.2d 239, 243, 412 P.2d 511 (1966). "Completion" is defined as the "act or action of completing, becoming complete, or making complete." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 465 (2002). "Complete" is, in turn, defined as "possessing all necessary parts, items, components, or elements"; "brought to an end or to a final or intended condition"; and "fully realized" or "carried to the ultimate." WEBSTER'S at 465.

¶27 While the term "completion" does not encompass the incomplete, the definition of "substantial completion" does. The related, but inapplicable, statute of repose for construction claims contemplates a lower standard for "substantial completion": A builder need only complete construction to allow occupancy or use of an improvement for its intended purposes. RCW 4.16.310; *see, e.g.*, *Smith v. Showalter*, 47 Wn. App. 245, 251, 734 P.2d 928 (1987); *Glacier Springs Prop. Owners Ass'n v. Glacier Springs Enters., Inc.*, 41 Wn. App. 829, 832, 706 P.2d 652 (1985).

¶28 Had Palmer Ridge intended the limitation period to run from the date of substantial completion, it should have made its intention apparent in the construction contract through use of that phrase. Thus we hold the project was not complete until the items on the punch list were complete. Whether Palmer Ridge completed the items on the punch list remains a material issue of fact for the trial court to resolve on remand. The trial court erred when it dismissed the Mattinglys' claims, and the Mattinglys may pursue their action against Palmer Ridge for failure to complete items on the punch list and any causes of action not otherwise precluded by language in the construction contract or certificate of substantial completion.

## IV. Warranty Disclaimer

¶29 The Mattinglys argue that Palmer Ridge did not validly disclaim express warranties in the construction contract and implied warranties.[15] Palmer Ridge maintains that the disclaimer issues are irrelevant to its arguments on appeal. We agree that Palmer Ridge did not effectively disclaim its express warranties, but we disagree that Palmer Ridge did not effectively disclaim the implied warranties, which it also limited to one year after payment.

### A. Standard of Review

¶30 Because the law generally disfavors warranty disclaimers, they are ineffectual unless the parties explicitly negotiate them and set them forth with particularity. *Berg v. Stromme*, 79 Wn.2d 184, 196, 484 P.2d 380 (1971); *Rottinghaus v. Howell*, 35 Wn. App. 99, 103, 666 P.2d 899 (1983). Disclaimer of an implied warranty requires that a seller's disclaimer "must be (1) conspicuous, (2) known to the buyer, and (3) specifically bargained for." *Burbo v. Harley C. Douglass, Inc.*, 125 Wn. App. 684, 693, 106 P.3d 258 (2005); *see also Olmsted v. Mulder*, 72 Wn. App. 169,

---

[15] The Mattinglys directed their arguments to the 2-10 HBW warranty's waiver of express and implied warranties, but the unenforceability of that document does not fully resolve the disclaimer issues.

176-78, 863 P.2d 1355 (1993). The "bargained for" require-
ment is designed, in part, to prevent sellers from hiding
disclaimers in the fine print or boiler plate of a contract—
for example, discussing the provision may be sufficient to
show that the parties "bargained for" the disclaimer.
*Olmsted*, 72 Wn. App. at 176-77. An effective disclaimer of
an express warranty also requires that it set forth with
particularity the qualities and characteristics being dis-
claimed. *Olmsted*, 72 Wn. App. at 176.

B. Implied Warranties

¶31 The Mattinglys argue that Palmer Ridge did not
validly disclaim implied warranties because the 2-10 HBW
warranty provision was not conspicuous, known to the
buyer, or bargained for. The Mattinglys identify, but do not
discuss, the impact of the language in the certificate of
substantial compliance that waives and limits any implied
warranties.

¶32 A reasonable person will understand an "as is"
clause to "waive all implied warranties, including the war-
ranty of habitability." *Warner v. Design & Build Homes,
Inc.*, 128 Wn. App. 34, 40-41, 114 P.3d 664 (2005); *see
Olmsted*, 72 Wn. App. at 178 n.3. Similarly, an otherwise
effective disclaimer stating that it waives "all implied
warranties" should also waive the implied warranty of
habitability.

¶33 Once Palmer Ridge finished construction, the
Mattinglys signed a certificate of substantial completion on
April 1, 2007, explaining that they "accept[ed] the project as
is." CP at 183. The Mattinglys further agreed that "the
duration of all implied warranties has been limited to one
(1) year from the date of final payment." CP at 183. On April
23, 2007, the Mattinglys paid the balance due on the
construction contract, i.e., the "final payment." CP at 184.

¶34 Although the 2-10 HBW warranty is unenforceable,
the certificate of substantial completion's waiver of implied
warranties is valid because it included an "as is" clause.
This waiver of the implied warranty limitation was con-

spicuous, and the Mattinglys knew of the limitation on the implied warranty because they negotiated changes in the certificate of substantial completion. The limitation on the implied warranty also meets the "bargained for" requirement because (1) Palmer Ridge did not hide it in fine print or bury it in the document and (2) the Mattinglys appear to have negotiated changes to the language in the certificate of substantial completion. Even in the absence of the "as is" clause, the limitation provision would have effectively cut off any recovery after April 23, 2008, one year after final payment. We hold that the certificate of substantial completion effectively disclaimed any implied warranties and limited the Mattinglys' ability to bring an action on any implied warranty for one year running from April 23, 2007.

¶35 Furthermore, the certificate of substantial completion explained that the Mattinglys "underst[ood] from now on the owner will not have a claim against the contractor for overlooking any item that was not listed [on the punch list] that could have been seen during the owner's inspection." CP at 183. The parties inspected the construction and signed the certificate of substantial completion. Thus, under the certificate of substantial completion, the Mattinglys are explicitly precluded from bringing an action against Palmer Ridge for any defects that they could have identified during the inspection.

¶36 On remand, the Mattinglys are barred from maintaining any claims for damages recoverable only under an implied warranty and the Mattinglys cannot recover for any patent defects not on the punch list that they could have identified during inspection.

C. Express Warranties

¶37 Although the Mattinglys may not sue Palmer Ridge for defects visible at the time of inspection or latent defects based solely on implied warranties, we must decide whether the Mattinglys may sue under any express warranties.

¶38 In *Olmsted*, Division One of this court reviewed a purchase and sale agreement with a preprinted warranty

stating that the well supplied adequate water and that the septic tank operated properly. 72 Wn. App. at 173. The parties also included an "as is" clause in a handwritten addendum that did not explicitly refer to the preprinted warranties in the purchase and sale agreement. *Olmsted*, 72 Wn. App. at 173. The court noted that the buyer's discussion of the disclaimer with the real estate agent met the " 'bargained for' requirement" but that the disclaimer did not satisfy the requirement that it "set forth with particularity the qualities and characteristics being disclaimed." *Olmsted*, 72 Wn. App. at 177. The *Olmsted* court held that the "as is" clause failed to disclaim the preprinted express warranties because it made "no reference to these express warranties, and it therefore cannot be fairly read as disclaiming them." 72 Wn. App. at 178.

¶39 In the Mattinglys' construction contract, Palmer Ridge expressly warranted its work to be (1) "in accordance to the provisions of the plans and specifications" with all systems "in good working order" and (2) "completed in a workman like manner" in compliance "with all applicable national, state and local building codes and laws." CP at 358. The reference in the certificate of substantial completion to the owner taking the property "as is" and "that no warranties are being made by the contractor" does not effectively disclaim the express warranties in the construction contract. CP at 183.

¶40 Thus, we hold that the construction contract and the certificate of substantial completion did not effectively disclaim Palmer Ridge's express warranty for workmanship and compliance with building codes and laws or the express warranty that construction would be in accordance with the plans and specifications[16] and that all systems would be in good working order. The Mattinglys would then have one year to bring their action on the remaining express warran-

---

[16] Palmer Ridge's liability is not unlimited: The certificate of substantial completion contemplates some variance for immaterial differences in dimensions and variances caused by any change orders requested by the Mattinglys.

ties from the date of completion or the date that Palmer Ridge ceased working on their home.

V. ATTORNEY FEES

¶41 Finally, the Mattinglys request attorney fees on appeal, based on a contractual right,[17] and reversal of the trial court's award of attorney fees to Palmer Ridge. Palmer Ridge asks that we affirm the trial court's award of attorney fees and that we award it attorney fees on appeal.

¶42 Because Palmer Ridge prevailed only in part on appeal, we vacate the trial court's award of attorney fees. Until the trial court resolves the Mattinglys' disputed issues, it will not be apparent whether this appeal has improved the Mattinglys' position. Thus, the extent to which Palmer Ridge and the Mattinglys are entitled to attorney fees at trial and on appeal shall be determined by the trial court after remand and further proceedings. RAP 18.1(i).

¶43 We affirm in part, on other grounds, the trial court's order granting summary judgment to Palmer Ridge for any claims arising solely under the implied warranties and any claims not on the punch list for patent defects apparent at the time of inspection. We reverse in part and remand for further proceedings to determine (1) whether Palmer Ridge completed the punch list items, (2) whether the Mattinglys sued within one year of completion or cessation of work, (3) Palmer Ridge's liability for the punch list items, and (4) any other damages recoverable under the construction contract's express warranties or other available causes of action. We also vacate the trial court's award of attorney fees to Palmer Ridge and remand for a determination of fees at the trial court and on appeal at the conclusion of the matter in the trial court.

PENOYAR, C.J., and HUNT, J., concur.

---

[17] The construction contract authorized reasonable attorney fees, costs, and expenses to the prevailing party for litigation "relating to the project, project performance or this contract." CP at 361.