IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| BAIONNE COLEMAN, | No. 84421-1-I |
| Respondent, | |
| v. | |
| IMPACT PUBLIC SCHOOLS, a State or municipal government agency, | UNPUBLISHED OPINION |
| Appellant. | |

BOWMAN, J. — Baionne Coleman sued her former employer, Impact Public Schools (Impact), alleging employment discrimination under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Impact appeals the trial court's denial of its motion to dismiss the complaint under CR 12(b)(1) and compel arbitration. Because the arbitration clause in Coleman's employment contract is valid and enforceable, we reverse and remand for further proceedings.

FACTS

Impact operates Impact Puget Sound Elementary School in Tukwila. On June 28, 2017, Impact Chief Executive Officer Jen Wickens offered Coleman a job at the elementary school as "School Leader Resident" via a two-page offer letter attached to an e-mail. Two provisions of the letter included:

> **At-Will Employment:** Your employment with the organization will be on an "at will" basis, meaning that either you or [Impact] may terminate your employment at any time for any reason or no

reason, with or without advance notice, without further obligation or liability.  The terms of your employment also may be altered at any time, at the discretion of [Impact].

**Waiver:**   You agree that any dispute or claim arising out of or related to your employment shall be settled by binding arbitration conducted in King County and administered by the American Arbitration Association [(AAA)] under its National Rules for the Resolution of Employment Disputes.  This shall include, without limitation, disputes relating to employment with [Impact] or termination thereof, and any claims of discrimination or any other claims under federal, state, or local law or regulation.

Wickens concluded her e-mail by telling Coleman, "Please let me know if you have any questions/thoughts."

Coleman read the offer letter, including the arbitration provision, the same day Wickens e-mailed it to her.  She then initialed the line labeled "I accept" the "offer of employment" and signed her full name at the bottom of the letter.

In July 2019, Coleman resigned from Impact.  On May 25, 2022, she sued Impact, asserting a single claim of employment discrimination under the WLAD.  Impact moved under CR 12(b)(1) to dismiss Coleman's complaint for lack of subject matter jurisdiction and compel arbitration according to the arbitration provision in her offer letter.  In response, Coleman argued that the arbitration provision is ambiguous, illusory, and procedurally and substantively unconscionable.  The trial court denied Impact's motion.

Impact appeals.

ANALYSIS

Impact argues that the trial court erred by denying its motion to dismiss Coleman's claim and compel arbitration.  We review the denial of a motion to

compel arbitration de novo. *Verbeek Props., LLC v. GreenCo Env't, Inc.*, 159 Wn. App. 82, 86, 246 P.3d 205 (2010).

The federal arbitration act (FAA), 9 U.S.C. sections 1 to 16, "applies to all employment contracts except for employment contracts of certain transportation workers." *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001)). Under the FAA, written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The effect of section 2 of the FAA is to create a body of substantive federal law on arbitration that state and federal courts must apply to arbitration agreements that fall under the act's coverage. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 734, 349 P.3d 32 (2015); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

Washington has a strong public policy favoring arbitration. *Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wn. App. 400, 405, 200 P.3d 254 (2009).[1] The party opposing arbitration bears the burden of showing the arbitration clause is inapplicable or unenforceable. *Verbeek*, 159

---

[1] Citing *Zuver*, 153 Wn.2d at 301, Impact argues we must indulge every presumption in favor of arbitration. Amicus Curiae Washington Employment Lawyers Association point out that under federal law, there is no longer a presumption in favor of arbitration. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) ("courts 'must hold a party to its arbitration contract just as the court would to any other kind' [and] 'may not devise novel rules to favor arbitration over litigation' ") (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. Ed. 2d 753 (2022)). Because we determine that the contract here is unambiguous, we need not resolve the issue.

Wn. App. at 86-87.   When the validity of an agreement to arbitrate is challenged, we apply ordinary state contract law.  *McKee v. AT & T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008).  "Arbitration agreements stand on equal footing with other contracts and may be invalidated by '[g]eneral contract defenses such as unconscionability.' "  *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 47, 470 P.3d 486 (2020)[2] (quoting *McKee*, 164 Wn.2d at 383).

Coleman argues that the arbitration provision in her offer letter—or employment contract—is unenforceable because it lacks mutual assent and consideration.  She also contends the provision is procedurally and substantively unconscionable.  We address each argument in turn.

A.  Mutual Assent

Coleman argues that the arbitration provision is unenforceable because it is "ambiguous and incapable of acquiring mutual assent."  We disagree.

To form a contract, the parties must manifest " 'their mutual assent to the same bargain at the same time.' "  *Burnett*, 196 Wn.2d at 48[3] (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)).  Contract law rests on the principle that " 'one is bound by the contract which [s]he voluntarily and knowingly signs.' "  *H. D. Fowler Co. v. Warren*, 17 Wn. App. 178, 180, 562 P.2d 646 (1977) (quoting *Nat'l Bank of Wash. v. Equity Invs.*, 81 Wn.2d 886, 912-13, 506 P.2d 20 (1973)).  So, when a party signs a contract, we presume they objectively manifested their assent to its

[2] Alteration in original.

[3] Internal quotation marks omitted.

contents absent some misrepresentation or wrongful act—"ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it." *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 897, 28 P.3d 823 (2001).

Coleman argues she did not know she assented to arbitrate her claims in lieu of a trial when she executed the employment contract. She likens her case to the circumstances in *Burnett*. In that case, Pagliacci Pizza and Burnett executed an employment contract. *Burnett*, 196 Wn.2d at 42-43. The contract required Burnett to "comply with the rules and policies outlined in [the employee handbook]," which Pagliacci did not provide to Burnett until after he signed the contract. *Id.* at 43, 56-57. Buried in the handbook was a mandatory arbitration clause. *Id.* at 43. After Pagliacci terminated Burnett, he sued, alleging various wage related claims. *Id.* at 45. Pagliacci moved to enforce the mandatory arbitration provision. *Id.*

Our Supreme Court concluded the arbitration clause was not valid because Burnett did not assent to arbitration when he executed the contract. *Burnett*, 196 Wn.2d at 56-57. It reasoned that "incorporation by reference does not, in itself, establish mutual assent to the terms being incorporated." *Id.* at 49. Instead, it " ' "must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." ' " *Id.* (quoting *Burnett v. Pagliacci Pizza, Inc.*, 9 Wn. App. 2d 192, 200, 442 P.3d 1267 (2019) (quoting *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn. App. 488, 494-95, 7 P.3d 861 (2000))). Because Burnett did not have the employee handbook at the

time he signed the contact, he did not know of the incorporated terms, and he could not have assented to the mandatory arbitration provision. *Burnett*, 196 Wn.2d at 49-50.

Coleman's case is different than *Burnett*. The plain language of Coleman's contract states, "You agree that any dispute or claim arising out of or related to your employment shall be settled by binding arbitration." It clarifies that this "shall include, without limitation, disputes relating to employment with [Impact] or termination thereof, and any claims of discrimination." And it explains that the claims not subject to arbitration are only "wage claims, claims for benefits under workers' compensation laws or claims for unemployment insurance benefits." Unlike the contract in *Burnett*, Coleman's contract contains clear language assenting to arbitration. And that language is on the face of a 2-page offer letter rather than buried in an employee handbook incorporated by reference. *See Burnett*, 196 Wn.2d at 43 (arbitration provision on page 18 of 23-page handbook).

Still, Coleman argues the contract lacks mutual assent because the clause "settled by binding arbitration" is ambiguous. According to Coleman, the term "settled" is "a modifier defined by alternative and vastly divergent concepts," leaving it unclear how disputes would be resolved.

Washington courts follow the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the

unexpressed subjective intent of the parties." *Id.* We "impute an intention corresponding to the reasonable meaning of the words used" and "generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* at 503-04. To determine the ordinary meaning of an undefined term, we look to the dictionary. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). "A contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings." *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). And we "will not read ambiguity into a contract 'where it can reasonably be avoided.' " *Id.*[4] (quoting *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 421, 909 P.2d 1323 (1995)).

Here, the parties agreed that "any dispute or claim arising out of or related to . . . employment shall be settled by binding arbitration conducted in King County and administered by the [AAA]." Coleman's employment contract does not define the word "settle," so we look to the dictionary for its plain meaning. The dictionary defines "settle" as "to conclude (a lawsuit) by agreement between the parties [usually] out of court." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2079 (2002). Viewed in context of the entire sentence, "settled by binding arbitration" means resolving any qualifying dispute or claim out of court through binding arbitration administered by the AAA.

---

[4] Internal quotation marks omitted.

Coleman fails to show that the language in the arbitration clause is ambiguous. And the language shows the parties' mutual assent to arbitrate any dispute or claim arising out of or related to Coleman's employment.

B. Consideration

Coleman and amicus curiae argue that the arbitration provision in her contract is not binding because the agreement lacks consideration. They contend that Impact's promise to arbitrate is illusory because the "At-Will Employment" section of the contract states that the terms of Coleman's employment, such as the agreement to arbitrate,[5] "may be altered at any time, at the discretion of [Impact]." We disagree.

Every contract must be supported by consideration to be enforceable. *King v. Riveland*, 125 Wn.2d 500, 505, 886 P.2d 160 (1994). "Consideration is a bargained-for exchange of promises," or " 'any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange.' " *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004) (quoting *King*, 125 Wn.2d at 505).

An obligation based on an illusory promise is unenforceable:

> "If the provisions of an agreement leave the promisor's performance entirely within [their] discretion and control, the 'promise' is illusory. Where there is an absolute right not to perform at all, there is an absence of consideration." Thus, if a promise is illusory, there is no consideration and no enforceable obligation.

*SAK & Assocs., Inc. v. Ferguson Constr., Inc.*, 189 Wn. App. 405, 411-12, 357 P.3d 671 (2015) (quoting *Felice v. Clausen*, 22 Wn. App. 608, 611, 590 P.2d

---

[5] Impact does not dispute on appeal that the agreement to arbitrate is a term of Coleman's employment. So, we do not address that issue.

1283 (1979)). We give preference to reasonable interpretations of contracts rather than to those that would make the contract unreasonable or its obligations illusory. Id. at 412 n.18 (quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983)).

Washington is a terminable-at-will employment state. *Ford v. Trendwest Resorts, Inc.*, 146 Wn.2d 146, 152, 43 P.3d 1223 (2002). Terminable-at-will employment may be terminated by either the employer or the employee at any time, with or without cause. *Id.*; *Roe v. TeleTech Customer Care Mgmt. (Colo.), LLC*, 152 Wn. App. 388, 399, 216 P.3d 1055 (2009). Implicit in the right to terminate at will is the right to unilaterally modify the terms of the employment. *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 73, 199 P.3d 991 (2008). So, an employer may unilaterally change terms of at-will employment so long as the employee receives reasonable notice of the change. *Id.* at 70 (quoting *Cole v. Red Lion*, 92 Wn. App. 743, 751, 969 P.2d 481 (1998)). If the employee accepts the new terms by continuing to work after receiving notice of the change, a new contract is formed. *Cascade Auto Glass, Inc. v. Progressive Cas. Ins. Co.*, 135 Wn. App. 760, 769, 145 P.3d 1253 (2006). At-will agreements are not illusory because a party changing terms must provide the other party notice—a legal detriment sufficient to satisfy the requirement of consideration. *SAK*, 189 Wn. App. at 413.

Here, Coleman's offer letter says that employment with Impact "will be on an 'at will' basis." As such, it advises Coleman that the terms of her employment "may be altered at any time, at the discretion of [Impact]." This accurately

9

describes terminable-at-will-employment and does not render Impact's promise to arbitrate illusory. Should Impact propose to modify the arbitration provision, Coleman can either accept or reject the modification. If she accepts, a new at-will employment agreement is formed. If not, the parties may choose to continue under the contract, reach an alternative agreement, or terminate employment. As a result, Impact has no absolute right to refuse arbitration, and its promise to arbitrate is not illusory.

C. Procedural Unconscionability

Coleman argues that the arbitration provision is procedurally unconscionable. We disagree.

"Procedural unconscionability is 'the lack of meaningful choice, considering all the circumstances surrounding the transaction.' " *Zuver*, 153 Wn.2d at 303 (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). To determine whether an agreement is procedurally unconscionable, we look at "(1) the manner in which the contract was entered, (2) whether [the signatory] had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print." *Burnett*, 196 Wn.2d at 54. " '[T]hese three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed.' " *Zuver*, 153 Wn.2d at 303[6] (quoting *Nelson*, 127 Wn.2d at 131). The "key inquiry" is whether the party "lacked meaningful choice." *Id.* at 305.

---

[6] Second alteration in original.

Citing *Mattingly v. Palmer Ridge Homes LLC*, 157 Wn. App. 376, 238 P.3d 505 (2010), Coleman argues that "Impact cannot fairly burden [her] to observe AAA Rules mentioned in her offer letter" that were not shown or made available to her. In *Mattingly*, the plaintiffs entered an agreement with Palmer Ridge Homes, obligating it to construct a custom home for them. *Id.* at 382. Six months later, the Mattinglys signed an application to enroll in Palmer Ridge's "New Home Warranty program" (Home Buyers Warranty). *Id.* at 383. They acknowledged that they read a sample copy of the warranty booklet but did not in fact see a copy of the warranty before they signed the enrollment application. *Id.* After discovering problems with the construction of their home, the Mattinglys sued Palmer Ridge. *Id.* at 386. Palmer Ridge moved for summary judgment, arguing that the plaintiffs' claims were barred by the Home Buyers Warranty's limitations provisions. *Id.*

Division Two of this court concluded that the Home Buyers Warranty's limitations were procedurally unconscionable and unenforceable. *Mattingly*, 157 Wn. App. at 392. It held that the circumstances surrounding the warranty were "suspect, as there [was] no evidence in the record that the Mattinglys had a reasonable opportunity to understand the terms contained within the booklet, and the terms remain buried in the booklet." *Id.* Specifically, the court observed that the plaintiffs did not receive a sample copy of the booklet before signing the warranty enrollment, and that even if they had received the booklet, the limitations provisions—though in bold and larger typeface than surrounding text—were on page 7 of a 32-page booklet. *Id.* at 391-92.

Unlike in *Mattingly*, Impact does not seek to hold a consumer to hidden terms of a warranty. Instead, it seeks to enforce an arbitration provision in an employment contract. Coleman's contract specifically identifies AAA as the agreed body to administer arbitration. And incorporation of the AAA rules by reference amounts to "clear and unmistakable evidence" that contracting parties agree to be bound by those rules. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (incorporation of AAA rules showed that parties agreed to delegate arbitrability to the arbitrator under those rules); *see also Raven Offshore Yacht Shipping, LLP v. F.T. Holdings, LLC*, 199 Wn. App. 534, 541, 400 P.3d 347 (2017) (by incorporating Maritime Arbitration Association rules into a contract, "the parties clearly and unmistakably manifested their agreement to be bound by those rules").

Still, citing *Ingalls v. Spotify USA, Inc.*, C16-03533 WHA, 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) (court order), Coleman argues that "[i]ncorporation of the AAA rules by reference is insufficient to impose those rules upon unsophisticated parties." In *Ingalls*, the Northern District of California District Court considered whether incorporation of the AAA rules can be "clear and unmistakable evidence" that contracting parties agreed to be bound by those rules "where one party is an unsophisticated consumer." *Id.* at *3. The court determined the plaintiffs, a music teacher and an architect seeking to stream music on Spotify, did not have the "business or legal acumen" to appreciate the significance of incorporating the AAA rules in a long contract, which Spotify

12

presented online with a maze of terms and a check box to show consent. *Id.* at *4, *1-*2.

Unlike the plaintiffs in *Ingalls,* Coleman is not an unsophisticated consumer seeking to purchase a product online, and the circumstances surrounding her acceptance of the terms of her contract are different. The record shows that when Coleman signed her employment contract, she had worked as a public school administrator and teacher for nearly 15 years. And the employment contract is a short, two-page document in which the arbitration clause and reference to the AAA rules are easily identifiable. Finally, Coleman had time to consider the contract and investigate its terms when Wickens invited her to "[p]lease let me know if you have any questions/thoughts" about the offer of employment.

The arbitration provision in Coleman's contract is not procedurally unconscionable.

D. Substantive Unconscionability

Finally, Coleman argues that the arbitration provision is substantively unconscionable. Again, we disagree.

Substantive unconscionability exists when a provision in the contract is one-sided. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344, 103 P.3d 773, 780 (2004). In determining whether a contractual provision is one-sided or overly harsh, courts look at whether the provision is " '[s]hocking to the conscience,

monstrously harsh, and exceedingly calloused.' " *Id.* at 344-45[7] (quoting *Nelson*, 127 Wn.2d at 131).

Coleman argues that the arbitration provision is substantively unconscionable as applied to her WLAD case because the AAA rules "frustrate[ ] the [act's] mandate to eradicate [discrimination]."[8]  Our Supreme Court rejected this same argument in *Adler*.  There, the plaintiff challenged the enforceability of a mandatory arbitration provision, arguing that the WLAD "requires a judicial forum for discrimination claims of employees."  *Adler*, 153 Wn.2d at 342-43.  The court disagreed, holding that when "a valid individual employee-employer arbitration agreement exists, the FAA requires that employees arbitrate federal and state law discrimination claims."  *Id.* 343-44 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27-28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)).  Coleman provides no authority distinguishing *Adler*.

Coleman fails to show that the arbitration provision in her employment contract lacks mutual consent or consideration.  And the provision is not

---

[7] Internal quotation marks omitted

[8] Coleman points to AAA employment rule 9, which states, "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."  Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures R. 9 (Nov. 1, 2009, rev. Oct. 1, 2017), https://www.adr.org/sites/default/files/EmploymentRules_Web_0.pdf [https://perma.cc/5BUU-JSKP].  She also cites rule 23, providing that the "arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, unless the parties agree otherwise or the law provides to the contrary."  Am. Arbitration Ass'n, Employment Arbitration Rules and Mediation Procedures R. 23.

procedurally or substantively unconscionable.  We reverse and remand for further proceedings.[9]

Brennan, J

WE CONCUR:

Díaz, J.

Smith, C.J.

---

[9] Because we reverse, we need not address Impact's argument that it was entitled to an evidentiary hearing to resolve disputed facts.